Opinions of the United States Court of Appeals for the Third Circuit



12-14-1994

# Barna v. City of Perth Amboy et al.

Precedential or Non-Precedential:

Docket 94-7242

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Barna v. City of Perth Amboy et al." (1994). *1994 Decisions.* Paper 220.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/220

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


NO. 93-5667


LOUIS D. BARNA; THERESA BARNA,

Appellants

v.

CITY OF PERTH AMBOY; TOWNSHIP OF WOODBRIDGE; PAUL OTTERBINE;
STEPHEN OTTERBINE; RICHARD ECHEVARRIA; BENJAMIN RUIZ;
ORLANDO SANABRIA; STEPHEN POLOKA; JAMES M. CRILLY;
CHARLES HAWKINS; FRANK WALLACE


On Appeal From the United States District Court
For the District of New Jersey
(D.C. Civil Action No. 92-cv-05133)


Argued June 21, 1994

BEFORE:   STAPLETON, GARTH and PRATT,* Circuit Judges

(Opinion Filed December 14, 1994)



John J. Barry
Madeline E. Cox (Argued)
Judson Hand
BARRY & McMORAN
One Newark Center
Newark, NJ 07102
Attorneys for Appellants
Louis D. Barna and Theresa Barna



* Honorable George C. Pratt, United States Circuit Judge for the
  Second Circuit, sitting by designation.

John G. Cito (Argued)
TOOLAN, ABBOTT, ZIZNEWSKI & WEBER
3090 Woodbridge Avenue
P.O. Box 6868
Edison, NJ 08818
Attorneys for Appellees
Otterbine, Echevarria, Ruiz and
Sanabria

Robert Musto (Argued)
51 Green Street
Woodbridge, NJ 07095
Attorney for Appellee
Charles Hawkins

OPINION OF THE COURT

STAPLETON, Circuit Judge:

Louis and Theresa Barna ("Mr. and Mrs. Barna") sued eight police officers, the City of Perth Amboy, and the Town of Woodbridge for violations of their constitutional rights stemming from an alleged assault and the subsequent detention of Mrs. Barna and arrest and prosecution of Mr. Barna. Following presentation of the plaintiffs' case, Officers Otterbine, Echevarria, Ruiz, and Sanabria moved for judgment as a matter of law, which the district court granted.[1] The district court also

---

[1]. The district court also granted judgment as a matter of law in favor of Officer Crilly, but the Barnas have chosen not to pursue that claim on appeal and we therefore do not consider it. The claims against the remaining defendants were dismissed with prejudice prior to trial by agreement of the parties.

dismissed their complaint as to Officer Hawkins for failure to effect proper service. The Barnas appeal from those orders.

We conclude that judgment as a matter of law was proper on Mr. Barna's assault-based claim because the evidence could not support a finding that the officers were acting under color of state law. We further conclude that judgment as a matter of law was also appropriate with respect to Mr. Barna's unconstitutional arrest claim and Mrs. Barna's forcible detention claim because a reasonable jury could only conclude that the officers acted reasonably under the circumstances. We therefore will affirm the district court's order as it relates to those claims.[2] We will reverse, however, the dismissal of the Barnas' claim against Officer Hawkins and will remand for a determination as to whether the answer purportedly filed on his behalf was authorized.

In reviewing an order granting judgment as a matter of law, we exercise plenary review and apply the same standard that

---

[2]. In the briefing before us, the Barnas contest the entry of judgment against them on the additional ground that their evidence established that Officers Otterbine and Echevarria committed the constitutional tort of malicious prosecution. See, e.g., Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993); Rose v. Bartle, 871 F.2d 331, 349 (3d Cir. 1989); Lee v. Mihalich, 847 F.2d 66, 70 (3d Cir. 1988). Their complaint, however, did not allege malicious prosecution or facts upon which such a claim could be based. Moreover, the "Joint Requests to Charge Jury" made no reference to such a claim, and the Barnas' counsel did not mention it in opposing the defendants' Rule 50(a) motion. Since no § 1983 claim based on malicious prosecution was advanced in the district court, we decline to entertain such a claim on appeal. Accordingly, we have no occasion to consider what effect the Supreme Court's decision in Albright v. Oliver, 114 S. Ct. 807 (1994), has on our circuit jurisprudence.

the district court should have used in deciding the motion.[3]
Sowell v. Butcher & Singer, Inc., 926 F.2d 289, 296 (3d Cir.
1991) (citing Frank Arnold Contractors, Inc. v. Vilsmeier Auction
Co. Inc., 806 F.2d 462, 463 (3d Cir. 1986)).  The officers'
motions for judgment as a matter of law should have been granted
only if, at the close of the Barnas' case, "there [was] no
legally sufficient evidentiary basis for a reasonable jury to
find for [the Barnas] on [an] issue" necessary to maintain their
claims.  Fed. R. Civ. P. 50(a).[4]  We also exercise plenary review
over the legal standards applied by the district court in
granting a motion to dismiss for lack of service.  Carteret
Savings Bank, FA v. Shushan, 954 F.2d 141, 144 (3d Cir.) (quoting
North Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687,
688 (3d Cir.) (per curiam), cert. denied, 498 U.S. 847 (1990)),
cert. denied, 113 S. Ct. 61 (1992).


                            I.

        The relevant facts as established by the plaintiffs'
presentation of their case at trial are as follows.[5]  On the

_____

[3].  The district court had jurisdiction pursuant to 28 U.S.C.
§ 1343(3), and this court has jurisdiction pursuant to 28 U.S.C.
§ 1291.

[4].  This version of Rule 50(a) became effective on December 1,
1993, shortly after the motions in this case were decided.  The
1993 amendment was merely technical in nature, however, and was
intended only to clarify the existing standards.  See Fed. R.
Civ. P. 50(a) advisory committee's note on 1993 amendment.

[5].  Because we are reviewing these claims on a motion for
judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a), we
view the facts in the light most favorable to the Barnas as the
party opposing the motion, without regard to the weight of the

evening of December 21, 1990, Louis and Theresa Barna went to dinner with Mrs. Barna's sister, Mary Haelson ("Aunt Mary"), and Mrs. Barna's mother. After dinner, and after taking Mrs. Barna's mother home, Mr. and Mrs. Barna and Aunt Mary went to a bar. Mr. and Mrs. Barna each consumed significant quantities of alcohol during the evening.[6]

The Barnas and Aunt Mary left the bar to return to the Barnas' home. On the way, they stopped at a Christmas tree business owned by a longtime friend of Mrs. Barna's family, Bobby DeHane. Mr. and Mrs. Barna were also in this line of business and Mrs. Barna was angry at Mr. DeHane, believing that earlier in the day he had reported electrical code violations at the Barnas' Christmas tree lot to a government agency. Mrs. Barna got out of the car and unsuccessfully sought out DeHane in order to confront him. Aunt Mary coaxed her back into the car.

DeHane's Christmas tree lot was across the street from another bar. Coincidentally, Perth Amboy Police Officers Paul Otterbine ("Otterbine") and Richard Echevarria ("Echevarria") were outside that bar in Officer Echevarria's truck. Officer Otterbine is the brother of Mrs. Barna and Aunt Mary. Although the officers were off-duty and not in uniform, they were armed

(..continued)
evidence or the credibility of witnesses. Sowell v. Butcher & Singer, Inc., 926 F.2d 289, 296 (3d Cir. 1991); Flynn v. Bass Bros. Enters., Inc., 744 F.2d 978, 983 (3d Cir. 1984) (quoting Brady v. Southern Ry. Co., 320 U.S. 476 (1943)).

[6]. According to their own testimony, Mr. Barna consumed a total of fourteen to sixteen servings of alcohol during the evening, and Mrs. Barna consumed the equivalent of 8 to 9 servings.

with their service revolvers and with their police-issue "PR-24" nightsticks. Otterbine noticed his mother's car, and saw his two sisters and Mr. Barna. Aunt Mary signaled to her brother that Mr. and Mrs. Barna were drunk and wanted to damage the Dehane property and asked Otterbine to follow her home. Otterbine explained to his partner that there was a problem with Mr. and Mrs. Barna and asked Echevarria to accompany him. The two officers, in Echevarria's truck, then followed Mr. and Mrs. Barna and Aunt Mary back to the Barnas' home.

At the Barnas' home, Aunt Mary attempted to leave with her sister, Dena Otterbine, who had been babysitting the Barnas' children. Mr. Barna testified that, when he saw his sisters-in-law pulling away in their car, he signalled for them to stop by standing in the path of their car and waving his arms. Aunt Mary, who was driving, stopped the car. Mr. Barna testified that he then went to the side of the car, knelt down to speak with Aunt Mary through the driver's side window, and asked her to stay with Mrs. Barna and the children while he went out. Instead, Aunt Mary drove slowly away, dragging Mr. Barna who was holding onto the driver's side door. Aunt Mary stopped the car after dragging Mr. Barna fifty or sixty feet.

Officer Otterbine, who apparently witnessed this, began yelling at Mr. Barna and accused him of hitting his sister, Aunt Mary. Mr. Barna argued with Officers Otterbine and Echevarria, telling them: "Look, you guys are out of your jurisdiction. Just get out of here, go home, this is none of your concern." App. 117. Echevarria then responded: "Jurisdiction? I'll show you

jurisdiction." App. 117. Echevarria and Otterbine then attacked Mr. Barna and beat him up. Mr. Barna testified that he was largely passive during the fight, and that at one point Officer Otterbine used his nightstick to place Mr. Barna in a chokehold. Mr. Barna's testimony was in large part corroborated by Bobby Borrero who had followed the Barnas home to receive a paycheck from Mr. Barna.

After beating up Mr. Barna, Officers Otterbine and Echevarria left Mr. Barna on the sidewalk and returned to Echevarria's truck. They attempted to leave the scene, but Mrs. Barna prevented their departure. She slapped her brother in the mouth and told the two officers not to go anywhere.

Mr. Barna, fearing for his wife's safety, retrieved an unloaded revolver from his house. He pointed the gun into the cab of the truck in which Otterbine and Echevarria were sitting and told the officers not to go anywhere until other police arrived. At his wife's bidding, Mr. Barna stopped pointing his gun at the officers and walked over to see if his wife was okay. Otterbine and Echevarria then jumped out of the truck, drew their weapons against Mr. Barna, and told him to drop his gun. Mr. Barna stepped backwards, tripped over the curb, and, as he fell, flung the revolver in his hand over his shoulder into a hedge.

Mr. Barna then ran into his house and retrieved a twelve-gauge pump action shotgun. He walked out onto the porch and "shuffled" the pump action of the shotgun, making a distinctive sound to gain the attention of all present. He told Otterbine and Echevarria not to leave. At that point, he

testified, he ran into the house, bolted the door, picked up the telephone and called his mother and his mother-in-law.

After Mr. Barna went back into his house, Officers Otterbine and Echevarria apparently called for backup and additional Perth Amboy police officers arrived on the scene, including Benjamin Ruiz ("Ruiz") and Orlando Sanabria ("Sanabria"). According to Mrs. Barna, Otterbine was drunk, and both he and Officer Echevarria continued to point their weapons at the Barnas' front door, stating that they were going to kill Mr. Barna. Mrs. Barna testified that she "was grabbing on [Otterbine's] arm, [yelling at him and] trying to get his attention," but "[h]e didn't want to pay attention to me." App. 312, 315. Otterbine thereupon instructed Officer Ruiz to remove Mrs. Barna from the scene, but when Ruiz attempted to do so, she resisted. Officer Ruiz tried to restrain Mrs. Barna by holding her arms, while she struggled to elude his grasp. Ruiz was finally able to handcuff Mrs. Barna and, with the assistance of Officer Sanabria, place her into a patrol car. At that point, she attempted "with all [her] might" to kick her way out of the patrol car. App. 317.

Officers Ruiz and Sanabria took Mrs. Barna to the Raritan Bay Medical Center, where they checked her in for intoxication. Upon arriving at the Medical Center, Ruiz removed the handcuffs and Mrs. Barna tried to leave, but the hospital staff placed her in restraints. "I was hysterical," she testified, "I was still combative, I wanted to go home." App.

318. After a time, Mrs. Barna calmed down and she was released from the hospital; she returned home at about 3:00 a.m.

While Mrs. Barna was at the hospital, events at the Barna home escalated. Based on the representations of Officers Otterbine and Echevarria that Mr. Barna had barricaded himself in his home with his children, the Woodbridge police officers who had been called to the scene contacted then Middlesex County Prosecutor (now Judge) Allen A. Rockoff[7] and informed him that a hostage situation was taking place at the Barna home. As the chief law enforcement officer for the county, Rockoff ordered the county's hostage negotiation team to go to the Barnas' home.

As part of the hostage situation response, the Barnas claim that Officer Charles Hawkins intercepted Mr. Barna's telephone conversations. After a period of time, Mr. Barna voluntarily surrendered to the police. He was arrested and detained for three hours, then taken to a hospital for treatment for his injuries, and finally transported to the Middlesex County Adult Corrections Facility. He was released when bail was posted.
Officers Otterbine and Echevarria later charged Mr. Barna with a number of criminal offenses in connection with these events.

Mr. and Mrs. Barna subsequently filed a civil complaint in the District Court for the District of New Jersey, alleging violations of their civil rights under 42 U.S.C. § 1983 by the

---

[7]. Judge Rockoff is now a member of the New Jersey Superior Court.

City of Perth Amboy; the Township of Woodbridge; Officers Otterbine, Echevarria, Ruiz, Sanabria, Hawkins; and others. Prior to trial, a number of counts were voluntarily dropped and a number of defendants dismissed from the suit. At a pre-trial conference, the magistrate judge recommended that the claims against Officer Hawkins be dismissed for improper service of process. At the start of the trial, and relevant to this appeal, the remaining defendants were Officers Otterbine, Echevarria, Sanabria, and Ruiz. Of the twelve counts in the Barnas' complaint, Counts I, III, and V remained for trial.

Count I alleged that Officers Otterbine and Echevarria "assaulted" Mr. Barna and thereafter caused his arrest, depriving him of his constitutional rights under the Eighth and Fourteenth Amendments.

Count III sought recovery against Officers Otterbine and Echevarria for creating the "false impression in other law enforcement officials" that Mr. Barna barricaded himself in his residence and held his children as hostages, thereby depriving Mr. Barna of his Eighth and Fourteenth Amendment rights.

Count V complained that Otterbine, Ruiz, and Sanabria maliciously and falsely arrested Mrs. Barna under color of law in violation of her Eighth and Fourteenth Amendment rights.

At trial, the Barnas called fourteen witnesses over five days. At the close of the Barnas' case, the remaining defendants moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a). The district court granted their motions, and also dismissed the complaint as to Hawkins for improper service

of process.  In a subsequently issued letter opinion, the district court explained, correctly in our view, that the events of that evening should be viewed as comprising two distinct incidents: (1) a "family altercation" between the officers and Mr. Barna; and (2) the officers' response to Mr. Barna's brandishing of firearms following their attempt to leave.  Barna v. Otterbine, No. 92-5133, letter op. at 11, 16 (D.N.J. Nov. 12, 1993).  The court found that the evidence viewed in the light most favorable to the plaintiffs could not support a claim under 42 U.S.C. § 1983 because, as to the first event, the officers' actions were not performed under color of state law, and, as to the second event, the officers' actions were a "reasonable, measured response to an armed threat" that was "fully justified" in light of the Barnas' threatening and disruptive conduct, and "no jury could reasonably find probable cause did not exist to arrest Mr. Barna" and to detain Mrs. Barna.  Id. at 17, 24, 27, 34-35.

II.

As noted, the Barnas brought this action under 42 U.S.C. § 1983.  Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). The Barnas have alleged violations of their rights under the United States Constitution,[8] claiming that the police officers' assault of Mr. Barna was unprovoked and involved the use of excessive force, and that the subsequent arrest, prosecution, and detention occurred without probable cause. They further contend that the defendants were acting in their official capacity as police officers--or were otherwise clothed in state authority, both during the altercation and during the ensuing events.

### A.   Assault Under Color of State Law

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" West v. Atkins, 487 U.S. 42, 49 (1988) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)). Accordingly, acts of a state or local employee in her official capacity will generally be found to have occurred under color of

---

[8]. While the Eighth Amendment was directly referenced in the complaint, the district court correctly concluded that the allegations were properly analyzed under the Fourth and Fourteenth Amendments. Barna v. Otterbine, No. 92-5133 (D.N.J. Nov. 12, 1993), letter op. at 19 n.6.

state law.  Id.; Flagg Bros. v. Brooks, 436 U.S. 149, 157 n.5 (1978).  This will be so whether the complained of conduct was in furtherance of the state's goals or constituted an abuse of official power.  West, 487 U.S. at 49-50; Monroe v. Pape, 365 U.S. 167, 184-87 (1961), overruled in part on other grounds, Monell v. Department of Social Services, 436 U.S. 658 (1978).  "It is firmly established that a defendant in a section 1983 suit acts under color of state law when he abuses the position given to him by the State."  West, 487 U.S. at 49; Screws v. United States, 325 U.S. 91, 111 (1945) ("Acts of [police] officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it.").

"It is [also] clear that under 'color' of law means under 'pretense' of law."  Screws, 325 U.S. at 111.  Thus, one who is without actual authority, but who purports to act according to official power, may also act under color of state law.  In Griffin v. Maryland, the Supreme Court held that a deputy sheriff employed by a private park operator acted under color of state law when he ordered the plaintiff to leave the park, escorted him off the premises, and arrested him for criminal trespass.  Griffin v. Maryland, 378 U.S. 130, 135 (1964) (analyzing state action necessary for a claim under the Equal Protection Clause of the Fourteenth Amendment).  While the deputy sheriff was in actuality acting as a private security guard and as agent of the park operator rather than as agent of the state, he "wore a sheriff's badge and consistently identified himself as a deputy sheriff rather than as an employee of the park," and

consequently "purported to exercise the authority of a deputy sheriff."  Id. at 135.[9]  The Court concluded that the privately employed deputy sheriff had been acting as a state actor, stating:

> If an individual is possessed of state authority and purports to act under that authority, his action is state action.  It is irrelevant that he might have taken the same action had he acted in a purely private capacity.

Id.  In this same vein, off-duty police officers who purport to exercise official authority will generally be found to have acted under color of state law.  Manifestations of such pretended authority may include flashing a badge, identifying oneself as a police officer, placing an individual under arrest, or intervening in a dispute involving others pursuant to a duty imposed by police department regulations.  See, e.g., Rivera v. LaPorte, 896 F.2d 691, 696 (2d Cir. 1990) (identification as a peace officer, arrest of plaintiff, and use of police car); Lusby v. T.G. & Y. Stores, Inc., 749 F.2d 1423 (10th Cir. 1984) (flashing of police badge and identification as police officer working as security guard), vacated on other grounds, 474 U.S. 805 (1985), adhered to on remand, 796 F.2d 1307 (10th Cir.),

_____

[9].  Under a local ordinance, the county sheriff could deputize individuals who were employed to act as private security personnel.  The individuals would be appointed as "special deputy sheriffs," and although they were paid by and acted as agents for the company or individual on whose account the appointment was made, they "ha[d] the same power and authority as deputy sheriffs possess within the area to which they are appointed."  Griffin, 378 U.S. at 132 n.1 (quoting § 2-91 of the Montgomery County Code of 1955).

cert. denied, 479 U.S. 884 (1986); Stengel v. Belcher, 522 F.2d 438, 441 (6th Cir. 1975), cert. dismissed, 429 U.S. 118 (1976) (intervening in barroom brawl).

On the other hand, a police officer's purely private acts which are not furthered by any actual or purported state authority are not acts under color of state law. See Delcambre v. Delcambre, 635 F.2d 407, 408 (5th Cir. 1981) (holding that alleged assault by on-duty police chief at police station did not occur under color of state law because altercation with the plaintiff, defendant's sister-in-law, arose out of a personal dispute and defendant neither arrested nor threatened to arrest the plaintiff); see also D.T. v. Independent School Dist. No. 16, 894 F.2d 1176 (10th Cir.) (finding sexual molestation of students by public school teacher/coach that occurred on an excursion unconnected to school activities during school vacation period when teacher was not employed by the school district did not occur under color of state law), cert. denied, 498 U.S. 879 (1990). While a police-officer's use of a state-issue weapon in the pursuit of private activities will have "furthered" the § 1983 violation in a literal sense, courts generally require additional indicia of state authority to conclude that the officer acted under color of state law. Compare Bonsignore v. City of New York, 683 F.2d 635 (2d Cir. 1982) (holding that officer who used police handgun to shoot his wife and then commit suicide did not act under color of state law even though he was required to carry the police gun at all times) with Stengel v. Belcher, 522 F.2d at 441 (finding evidence supported

determination of "under color" where off-duty officer intervened in barroom brawl as required by relevant police department regulations); United States v. Tarpley, 945 F.2d 806, 809 (5th Cir. 1991) (finding requirement under color of state law met where off-duty deputy sheriff assaulted wife's alleged ex-lover in a private vendetta but identified self as police officer, used service revolver, and intimated that he could use police authority to get away with the paramour's murder), cert. denied, 112 S. Ct. 1960 (1992).

In this case, Officers Otterbine and Echevarria were off duty when the altercation with Mr. Barna occurred, and the evidence indicates that the underlying nature of their dispute was personal. The evidence would not support a finding that the officers were acting with actual police authority during the altercation. Nor would it support a finding that they purported to be acting with police authority.

While the fact that they were off duty is not dispositive of whether the officers were exercising actual police authority, there was no evidence to indicate that the officers were on official police business. First, the officers were literally "out of their official jurisdiction." New Jersey law provides that a municipal police officer's jurisdiction is limited to the municipality in which the officer was appointed. N.J. Stat. Ann. § 40A:14-152 (West 1993); see State v. Cohen, 375 A.2d 259, 264 (N.J. 1977). A police officer may act in his or her official capacity outside of this jurisdiction under only two

circumstances: (1) when in hot pursuit of a person whom the officer believes to have committed a crime, N.J. Stat. Ann. § 2A:156-1 (West 1985), or (2) when making an arrest anywhere in the state for a crime committed in the officer's presence, N.J. Stat. Ann. § 40A:14-152.1 (West 1993). Officers Otterbine and Echevarria, who were Perth Amboy police officers, thus could not have been acting with official authority under the facts of this case when they allegedly assaulted Mr. Barna at his home in the Town of Woodbridge. See Rambo v. Daley, 851 F. Supp. 1222, 1224 (N.D. Ill. 1994) (recognizing police officers had no actual authority to conduct arrest in neighboring state and analzying further to determine whether officers acted with purported authority); Keller v. District of Columbia, 809 F. Supp. 432, 43 (E.D. Va. 1993) (same).

Otterbine decided to follow the Barnas to their home at the request of a relative and asked his partner, with whom he was sharing a social evening, to accompany him. The altercation began when Officer Otterbine accused Mr. Barna of hitting the officer's sister, Aunt Mary. His partner then intervened to support him and, at the end of the fracas, the two officers attempted to leave. The officers had not been called to the scene to conduct official police business, nor were they in pursuit of Mr. Barna on the belief that he had already committed a crime. Finally, the fact that they attempted to leave after the assault establishes that the officers were not trying to arrest Mr. Barna at the time they assaulted him. Thus, there was no evidence to support a finding that the officers were clothed

with actual state authority during the initial phase of the altercation, prior to Mr. Barna's brandishing of firearms.

This situation is thus unlike that in Black v. Stephens, 662 F.2d 181 (3d Cir. 1981), cert. denied, 455 U.S. 1008 (1982), where we concluded that an on-duty police officer may act under color of state law when he performs official duties that arose in a quasi-personal context. In Black, the plaintiff brought a § 1983 claim against a police officer in connection with an arrest and prosecution that arose out of a traffic incident involving the plaintiff's and the officer's vehicles. We found sufficient indicia of state authority to uphold the denial of judgment not withstanding the verdict because the police officer was an on-duty (although plain-clothed) detective, he wore a police academy windbreaker, and he had initiated contact with the plaintiff on the belief that the plaintiff's actions warranted official investigation. Black v. Stephens, 662 F.2d at 188. Here there was no evidence that the alleged assault occurred as a result of official police concerns; on the contrary, the evidence indicates that the assault arose out of the officer's familial and personal concerns.

Turning to the issue of whether the officers purported to be acting with state authority when they followed the Barnas home and accosted Mr. Barna, we also find no evidence supporting the Barnas' position. The officers did not identify themselves as police officers, they did not indicate that they were acting on official police business, and importantly, they did not

attempt to arrest Mr. Barna, or otherwise invoke their police authority, during the initial phase of the altercation.

The only arguable connections between the officers' alleged assault of Mr. Barna and the use of police authority are: (1) Echevarria's comment, "I'll show you jurisdiction," made in response to Mr. Barna's statement that the officers were out of their jurisdiction, and (2) evidence that Echevarria used a state-issue "PR-24" nightstick to hold Mr. Barna during the assault--a weapon that Officer Echevarria could only legally carry in New Jersey because of his position as a police officer.[10] We believe Officer Echevarria's comment regarding the officers' "jurisdiction" is too ambiguous to be of significant value on the issue of state authority. As noted, the officers were in fact out of their police jurisdiction. Instead of indicating that Echevarria intended to exercise official police authority, the comment could just as likely have been meant to convey that Echevarria intended, despite the lack of any real or purported authority, to put Mr. Barna in his place.

The use of a police-issue nightstick is undoubtedly the Barnas' strongest support for the view that the officers were acting under color of state law during the alleged assault. The nightstick was an objective indicia of police authority, and Echevarria was legally entitled to possess it only because of his

---

[10]. See N.J. Stat. Ann. § 2C:39-3(e), (g) (West Supp. 1994) (knowing possession of a billy club is a crime except when it is possessed by a law enforcement officer pursuant to regulation while on duty or traveling to or from an authorized place of duty).

position as a police officer.  At the time it was used, however, Echevarria did not have actual authority to use the nightstick, since, by law, an officer may only carry the weapon while on duty or while traveling to or from an authorized place of police duty. See N.J. Stat. Ann. § 2C:39-3(e), (g).  Nor, under the circumstances of this case, do we view the use of the nightstick to hold Mr. Barna during the assault as an assertion by Echevarria of official authority.  In short, we believe the unauthorized use of a police-issue nightstick is simply not enough to color this clearly personal family dispute with the imprimatur of state authority.[11]

To hold otherwise would create a federal cause of action out of any unauthorized use of a police-issue weapon, without regard to whether there are any additional circumstances to indicate that the officer was exercising actual or purported police authority.  We do not understand the under color requirement of § 1983 to be satisfied by such a tenuous

---

[11].  We note that County Prosecutor, now Judge, Rockoff testified that under the county's official policy its police officers are police twenty-four hours a day.  We find that policy to be insufficient indicia of state authority under the circumstances of this case.  At most, the existence of such a policy might have the effect of authorizing official police action (such as an arrest) conducted by an off-duty police officer.  In such a situation, the policy might be probative of "under color" action if the defendant officer allegedly violated the plaintiff's rights while engaging in activities normally associated with the police function.  See, e.g., Stengel v. Blecher, 522 F.2d 438, 441 (6th Cir. 1975) (finding indicia of "under color" element where off-duty officer intervened in barroom brawl and used state-issue weapon pursuant to police policy), cert. dismissed, 429 U.S. 118 (1976).

connection to state authority.  See Bonsignore v. City of New York, 683 F.2d 635 (2d Cir. 1982) (holding that officer who used police handgun to shoot his wife and then commit suicide did not act under color of state law even though he was required to carry the police gun at all times); cf. Rivera v. Laporte, 896 F.2d 691 (2d Cir. 1990) (finding assault occurred under color of state law when officer used service revolver to beat plaintiff and then arrested plaintiff for events giving rise to the assault).  The district court properly granted judgment as a matter of law in favor of Officers Otterbine and Echevarria on the assault-based claim because a jury could not reasonably find that the assault occurred under color of state law.  The district court's judgment on that claim will be affirmed.

## B.  Mr. Barna's Unconstitutional Arrest Claim

The complaint alleged that Officers Otterbine and Echevarria maliciously created the false impression with other law enforcement personnel that he was holding his children hostage in his house and ultimately caused him to be arrested without probable cause in violation of his constitutional rights. The district court concluded, and the parties before us accept, that Mr. Barna is essentially claiming his arrest was an unreasonable seizure for purposes of the Fourth and Fourteenth Amendments.  An arrest may violate the standards of the Fourth Amendment if effected with unreasonable force, Graham v. Connor, 490 U.S. 386, 397 (1989), or if made without probable cause to believe that a crime has been committed, Patzig v. O'Neil, 577 F.2d 841 (3d Cir. 1978); see Gerstein v. Pugh, 420 U.S. 103, 111 (1975).  The district court analyzed Mr. Barna's false arrest claim under both of these theories and correctly concluded that there was no basis in the evidence for such a claim.

The test for an arrest without probable cause is an objective one, based on "the facts available to the officers at the moment of arrest."  Beck v. Ohio, 379 U.S. 89, 96 (1964); Edwards v. City of Philadelphia, 860 F.2d 568, 571 n.2 (3d Cir. 1988).  Evidence that may prove insufficient to establish guilt at trial may still be sufficient to find the arrest occurred within the bounds of the law.  Henry v. United States, 361 U.S. 98, 102 (1959).  As long as the officers had some reasonable basis to believe Mr. Barna had committed a crime, the arrest is justified as being based on probable cause.  Probable cause need

only exist as to any offense that could be charged under the circumstances.  Edwards v. City of Philadelphia, 860 F.2d at 575-76.

Once Mr. Barna brandished weapons in response to the officers' conduct, the officers were justified in effecting his arrest pursuant to New Jersey's aggravated assault statute, which makes it a crime to "[k]nowingly under circumstances manifesting extreme indifference to the value of human life point[] a firearm . . . at or in the direction of another, whether or not the actor believes it to be loaded."  N.J. Stat. Ann. § 2C:12-1(b)(4) (West Supp. 1994).  The plaintiffs' evidence would not support a determination that Officers Otterbine and Echevarria lacked probable cause to believe that Mr. Barna had violated the aggravated assault statute.

As we have noted, the physical altercation between Mr. Barna and Officers Otterbine and Echevarria had already concluded when Mr. Barna returned from his house with a revolver and pointed it into the cab of the truck in which the officers sat. The officers reacted by jumping out of the truck, drawing their weapons against Mr. Barna, and instructing him to drop his gun. When the revolver slipped from his hands, Mr. Barna retrieved a shotgun from the house, "shuffled" it while standing on his porch, and then retreated to the house.  Under the objective standard for probable cause, a jury could only conclude that a reasonable officer under the circumstances would have been justified in believing Mr. Barna was brandishing his firearms with extreme indifference to human life in violation of N.J.

Stat. Ann. § 2C:12-1(b)(4). Under this objective standard, Mr. Barna's subjective motive in brandishing his guns is irrelevant, as is the fact that he claims the guns were unloaded.[12]

Because the plaintiffs submitted no evidence to show that the officers' conduct in initiating an arrest under the aggravated assault statute would have been unreasonable, Mr. Barna's arrest occurred with probable cause as a matter of law, and there was no violation of his Fourth Amendment rights on this ground.[13]

To the extent that Mr. Barna's unconstitutional arrest claim rests on the allegation that his arrest was effected with excessive force, the claim still must fail. Subsequent to the physical altercation with Mr. Barna, the officers only drew their weapons and ordered Mr. Barna to drop his revolver. The Barnas have failed to present any evidence from which a jury could conclude that such action involved the use of excessive force. Common sense dictates a finding that the officers' conduct was reasonable under the circumstances. For all of these reasons, the judgment on Mr. Barna's claim of unconstitutional arrest will be affirmed.

---

[12]. Mr. Barna claims he was protecting his wife and attempting to make a citizen's arrest.

[13]. With respect to Mr. Barna's assertion that the officers created the false impression with other law enforcement officials that he was involved in a hostage situation, we agree with the district court that this was a reasonable view of the events following Mr. Barna's brandishing of firearms and withdrawal into his home.

## C. Mrs. Barna's False Imprisonment Claim

Count V of the Barnas' complaint alleges that Perth Amboy officers Otterbine, Sanabria, and Ruiz unconstitutionally detained Mrs. Barna when they removed her from her residence and transported her to the Raritan Bay Medical Center. Like an arrest, forcible detention by the police may violate an individual's Fourth Amendment rights against unreasonable seizure. Terry v. Ohio, 392 U.S. 1, 16 (1967) ("It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."). To find in favor of Mrs. Barna on her § 1983 forcible detention claim, a jury would have to find that her removal and detention were unreasonable. Id. at 19; Thompson v, Spikes, 663 F. Supp. 627, 648 (S.D. Ga. 1987). An unreasonable detention is one conducted without lawful authority. Chrisco v. Shafran, 507 F. Supp. 1312, 1321-22 (D. Del. 1981). Therefore, if the officers' conduct was authorized under New Jersey law and that law was not itself constitutionally infirm as authorizing unjustifiable seizures, her detention would be lawful and no § 1983 claim would lie. Cf. Veiga v. McGee, 26 F.3d 1206, 1214 (1st Cir. 1994) (holding that a detention by police officers pursuant to Massachusetts's protective custody statute would amount to an unlawful seizure if the statute did not reasonably authorize a detention for the reasons given).

> N.J. Stat. 26:2B-16 (West 1987) states:
> Any person who is intoxicated in a
> public place may be assisted to his residence
> or to an intoxication treatment center or

other facility by a police officer or other authorized person. . . .

* * * *

A police officer acting in accordance with the provisions of this section may use such force, other than that which is likely to inflict physical injury, as is reasonably necessary to carry out his authorized responsibilities. . . .

* * * *

A person assisted to a facility pursuant to the provisions of this section, shall not be considered to have been arrested and no entry or other record shall be made to indicate that he has been arrested.

The Barnas do not challenge the constitutionality of this statute, and they cannot persuasively dispute that it authorized the challenged actions of the officers. Given Mrs. Barna's conduct on the night in question, the officers would have been justified in believing she was intoxicated. Mrs. Barna testified that, in attempting to prevent Officers Otterbine and Echevarria from leaving after the altercation with her husband, she "back-handed" Otterbine in the face, and that when the officers responded to Mr. Barna's brandishing of his revolver, she interfered by grabbing at Otterbine. Once inside the police car, she attempted to kick her way out. At the hospital she was "combative." App. 318. Although at trial, Mrs. Barna denied that she was drunk that evening and explained that she did not remember a blood test being administered at the hospital, she also testified to the fact that she had admitted in interrogatories and in a prior criminal trial that her breath

smelled like alcohol and that the hospital's toxicological report showed her blood alcohol level to be twice the amount New Jersey defines as being "under the influence."

Mrs. Barna makes a final argument that the above-quoted statute cannot make her detention lawful because it was an ad hoc rationale produced by the officers on cross-examination. Because the standard for reasonableness in this context is an objective one, however, we conclude that the statute provides a sufficient legal basis for her detention, and we therefore affirm judgment as a matter of law against her on this claim.

III.

In addition to appealing the district court's order granting judgment as a matter of law in favor of the Perth Amboy officers, the Barnas appeal the dismissal of their complaint as to Officer Charles Hawkins because of a failure to effectively serve him.[14]

Officer Hawkins is employed by the Township of Woodbridge, and Alan J. Baratz is the attorney for the township. On September 9, 1993, Baratz filed an answer to the Barnas' complaint purportedly on behalf of "[t]he Township of Woodbridge, Charles Hawkins, James Crilly, and Frank Wallace." App. 1175. At the close of this answer, Baratz expressly described his firm

_____

[14]. In Count XI of their amended complaint the Barnas alleged that Officer Hawkins intercepted Mr. Barna's telephone calls without a warrant or any judicial authority, in violation of their protected privacy interests.

as attorneys for all four of these defendants.  Thirteen days later, on September 22, 1993, a conference was held before the Magistrate Judge concerning in limine motions.  At the start of the hearing, Baratz identified himself as follows: "I'm appearing on behalf of the Township of Woodbridge, my client in this matter, and also on behalf of . . . the City of Perth Amboy and Defendant Poloka in reference to those issues which are in common in regard to the claims against the public entities in this case."  App. 953-54.  An attorney named Scott Moynihan identified himself at the hearing as appearing on behalf of Frank Wallace.  Nobody purported to be appearing on behalf of Officer Hawkins.

During the course of the hearing, Baratz stated that he was not and never had been representing Officer Hawkins.  Also during the course of the hearing, it was disclosed that the Barnas had never served their complaint upon Officer Hawkins personally.  Instead, it was discovered, they had served the notice which they had meant for Officer Hawkins upon the clerk of the Township of Woodbridge, who in turn had purported to receive it on behalf of Hawkins.  The magistrate judge held that this was improper service of process.  He stated, "I'm going to recommend that Judge Lechner administratively dismiss this case pursuant to Rule 4-J [sic] as to Mr. Hawkins."  App. 1003.

On September 28, the trial began.  On October 5, 1993, the district court dismissed the complaint against Hawkins with prejudice for "failure of the plaintiffs to properly serve process."  App. 1238.  According to the district court's letter opinion of November 12, 1993, the Barnas then sought to "appeal"

to the district court the district court's order of October 5. The district court refused to reconsider its order for the following reasons:

> The Hawkins Dismissal was made pursuant to the recommendation of [Magistrate] Judge Cavanaugh, and upon representations made to Judge Cavanaugh by Plaintiffs' attorney.
>
> * * * *
>
> Plaintiffs knew of Judge Cavanaugh's recommendation of dismissal but did not appeal to this court.

Barna v. Otterbine, No. 92-5133, letter op. at 3 (D.N.J. Nov. 12, 1993).

On appeal to this court, the Barnas contend that they never had an opportunity to object to the magistrate judge's recommendation because, while he indicated he was going to make a recommendation to the trial judge, he never filed a document reflecting that recommendation. There was, therefore, no document from which the Barnas could appeal and to which they could state their objections. The record confirms that no such document was filed. For this reason, the Barnas argue, the district court's dismissal of the complaint as to Officer Hawkins was improper. We agree.

Rule 72 of the Federal Rules of Civil Procedure gives litigants an opportunity to respond to a magistrate judge's "recommendation for disposition of [a] matter." That rule contemplates "entry into the record" of the magistrate's recommendation and service of that recommendation on the parties. Fed. R. Civ. P. 72. The applicable local court rule implementing

Rule 72 requires submission of the magistrate's recommendation to the district court.  See D.N.J. Local R. 40A(2).

Because there was no recommendation of the magistrate judge that the complaint be dismissed as to Officer Hawkins for lack of proper service, we will reverse the judgment in his favor and remand to the district court for consideration of the Barnas' objections to the dismissal.  The Barnas do not contest the magistrate judge's finding that Hawkins had not been properly served; they instead argue that Hawkins answered the complaint and thereby waived any objection to improper service of process.  On remand, the district court should determine whether the answer filed by Baratz was authorized by Hawkins.  If the answer was authorized, any imperfection in service of process should be deemed waived.  See Government of V.I. v. Sun Island Car Rentals, Inc., 819 F.2d 430, 433 (3d Cir. 1987).  If the answer was not an authorized response from Officer Hawkins, the district court should then consider whether the circumstances do or do not constitute "good cause" under Fed. R. Civ. P. 4(m).  If they do, an extension of time for service of process should be granted.  If they do not, the claim against Hawkins should be dismissed with prejudice.[15]

_____

[15]. Officer Hawkins engaged Robert Musto, Esquire, to represent him in connection with this appeal.  Hawkins suggests that we should affirm the judgment below because he was a party during the trial (the order dismissing him not having been entered until the day after the trial concluded), and the Barnas offered no evidence at trial in support of their claim against him.  We decline to adopt this suggestion.  Our mandate, however, will be without prejudice to Hawkins' right to renew this contention before the district court which is in a far better position than we are to determine the reasonableness of the Barnas' view that

IV.

We will reverse the district court's order dismissing the complaint against Officer Hawkins and remand for further proceedings consistent with this opinion. In all other respects, we will affirm the judgment of the district court.

(..continued)
evidence against Hawkins would have been inappropriate. In support of this view, the Barnas stress that (1) they described at the pre-trial conference evidence that they intended to offer against Hawkins, but (2) the magistrate judge stated that he was recommending dismissal of Hawkins, and (3) the trial judge determined to go forward with trial at a time when no one was representing Hawkins. The district court is also in a better position to determine whether the Barnas acted reasonably in failing to bring the answer filed on behalf of Hawkins to the attention of the magistrate promptly following the conference of September 22, 1993. That issue was not briefed before us. We therefore express no opinion on it, and our mandate will be without prejudice to its being raised on remand.