**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4367
_____

PETER QUINN,
                    Appellant

v.

TAMIKA CINTRON, PHILADELPHIA DEPARTMENT OF HUMAN SERVICES;
DETECTIVE RUSSELL SHOEMAKER, PHILADELPHIA POLICE DEPARTMENT,
CENTRAL DETECTIVE DIVISON; OFFICER MICHAEL RAFFERTY,
PHILADELPHIA POLICE DEPARTMENT, 9TH POLICE DISTRICT; CITY OF
PHILADELPHIA, PHILADELPHIA POLICE DEPARTMENT
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-11-cv-02471)
District Judge:  Honorable Thomas N. O'Neill, Jr.
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 5, 2015

Before:  FUENTES, SMITH, and NYGAARD, *Circuit Judges*

(Filed November 10, 2015)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FUENTES, *Circuit Judge*

Peter Quinn appeals the District Court's order granting defendants Russell Shoemaker and Michael Rafferty's motion for partial summary judgment and its order denying reconsideration. For the following reasons, we will affirm.

**I.**

On December 1, 2009, Quinn appeared as a court-appointed attorney in family court in Philadelphia. Tamika Cintron, a Philadelphia Department of Human Services ("DHS") social worker, was assigned to one of Quinn's cases. In the waiting room, Quinn went to move Cintron's jacket to sit in the vacant seat next to her. Cintron became upset and accused Quinn of elbowing her. Three other DHS employees witnessed the altercation.

The police were called and Detective Shoemaker arrived at the courthouse. Detective Shoemaker spoke with Cintron, who stated that she had been elbowed, indicated that her rib cage hurt, and identified Quinn as her assailant. Detective Shoemaker also spoke with the three eyewitnesses, all of whom corroborated Cintron's account. Officer Rafferty then arrived at the courthouse and was directed by Detective Shoemaker to handcuff Quinn and transport him to police headquarters. Cintron and the three eyewitnesses were also brought to police headquarters to be interviewed further.

Quinn was charged with aggravated assault, simple assault, and recklessly endangering another person, but the charges were eventually dropped. Subsequently, Quinn sued Detective Shoemaker and Officer Rafferty (hereinafter, "the officers") for, among other things, false arrest and false imprisonment in violation of 42 U.S.C. § 1983

2

and Pennsylvania state law. The officers moved for partial summary judgment on these claims, arguing that they had probable cause to arrest Quinn. The District Court agreed and granted the motion. Quinn's remaining excessive force claim against Officer Rafferty went to trial and the jury found in Officer Rafferty's favor. This appeal followed.[1]

## II.

Quinn argues that a dispute of material fact exists as to whether the officers had probable cause to arrest him at the courthouse. He highlights Detective Shoemaker's conflicting testimony regarding when he thought he had probable cause to arrest Quinn, at the courthouse versus at the police station. But Detective Shoemaker's subjective understanding does not change the objective analysis required under the probable cause inquiry. As the District Court pointed out, any dispute as to when Quinn was actually arrested is ultimately irrelevant; under the circumstances here, viewed objectively, the officers had probable cause to arrest Quinn at the courthouse.

We note that, generally, "the question of probable cause in a section 1983 damage suit is one for the jury."[2] A court, however, "may conclude 'that probable cause exists as

---

[1] We have jurisdiction pursuant to 28 U.S.C. § 1291. We review a district court's grant of summary judgment *de novo,* applying the same standard the district court applied. *Doe v. Indian River Sch. Dist.*, 653 F.3d 256, 275 n.7 (3d Cir. 2011). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).
[2] *Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir. 1998).

a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding,' and may enter summary judgment accordingly."[3]

"The test for an arrest without probable cause is an objective one, based on 'the facts available to the officers at the moment of arrest.'"[4] "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."[5] An officer's state of mind "does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action."[6] We will therefore examine the facts and circumstances that were gathered by the officers at the courthouse to determine whether Quinn's arrest was supported by probable cause.

At the courthouse, Cintron told Detective Shoemaker that she had been elbowed and identified Quinn as her assailant. We have held that "[w]hen a police officer has received a reliable identification by a victim of his or her attacker, the police have probable cause."[7] Even if Cintron's account alone was insufficient, Detective Shoemaker also received information from three eyewitnesses at the courthouse. The Supreme Court has explained that "in making a warrantless arrest an officer may rely upon information received through an informant, rather than upon his direct observations, so long as the

---

[3] *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788-89 (3d Cir. 2000) (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)).
[4] *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994) (quoting *Beck v. Ohio*, 379 U.S. 89, 96 (1964)).
[5] *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995).
[6] *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (internal quotation marks omitted).
[7] *Wilson v. Russo*, 212 F.3d 781, 791 (3d Cir. 2000) (internal quotation marks omitted).

4

informant's statement is reasonably corroborated by other matters within the officer's knowledge."[8] Here, we have not just an informant but three eyewitnesses, all of whom corroborated Cintron's account of the incident. Based on these facts and circumstances, we conclude that the officers had probable cause to arrest Quinn at the courthouse.

Quinn also argues that the officers lacked probable cause to arrest him because there was no evidence that Cintron endured any bodily injury. This argument confuses the probable cause inquiry with the prosecutor's burden of proof at trial, that is, to prove every element of the offense beyond a reasonable doubt.[9] Indeed, the three cases Quinn cites in support of this argument all involve whether there was sufficient evidence to maintain an assault conviction. Thus, Quinn's emphasis on the fact that the crime of assault under Pennsylvania law requires "bodily injury" is to no avail.

**III.**

For the foregoing reasons, we hold that the District Court did not err in granting the officers' motion for partial summary judgment and in denying reconsideration. We will therefore affirm.

---

[8] *Illinois v. Gates*, 462 U.S. 213, 242 (1983) (internal quotation marks omitted).
[9] *See Orsatti,* 71 F.3d at 482-83 ("[P]robable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt.").