**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 16-1652

———————

VINCENT THEODORE DAMICO,
Appellant

v.

HARRAH'S PHILADELPHIA CASINO & RACETRACK,
a/k/a Chester Downs and Marina LLC;
TROOPER RYAN BUCH, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES;
PENNSYLVANIA GAMING BOARD; JOHN DOES;
JANE DOES; PENNSYLVANIA STATE POLICE

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 2-14-06091)
District Judge: Honorable Gerald J. Pappert

———————

Submitted Under Third Circuit L.A.R. 34.1(a)
November 9, 2016

———————

Before: JORDAN, GREENAWAY, JR., RENDELL, *Circuit Judges*.

(Opinion Filed:  December 14, 2016)

———————

OPINION[*]

———————

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

Vincent Damico, Appellant, was gambling with his common-law wife at Harrah's Philadelphia Casino & Racetrack ("Harrah's") when they were arrested for using counterfeit money. Those charges were ultimately dropped. As a result, Damico brought suit against Harrah's and Pennsylvania State Police Trooper Ryan Buch, Appellees. The District Court granted summary judgment to Appellees on all counts. For the reasons set forth below, we affirm.

## I.    BACKGROUND

Damico visited Harrah's casino on the night of November 4, 2012, accompanied by his common-law wife Victoria Goscicki. They separated to gamble, and reconnected after Damico had lost his initial stake. Goscicki told Damico that she had been winning and gave him two $100 bills. They separated again. Damico played with one of the $100 bills he had been given but kept the other. After around 40 minutes, Damico was approached by a security guard, who told him that "We have your wife downstairs" and that "you have to come with me." App. 156.

Goscicki was being held because she was accused of using counterfeit money. According to the cage supervisor, Goscicki had attempted to exchange four $100 bills and the supervisor believed that one of the bills looked suspicious. The supervisor marked it and identified it as counterfeit. When confronted, Goscicki grabbed the other bills and attempted to leave, at which point she was detained by security. Appellant

2

asserts, although without citation to the record, that Goscicki did not try to flee, but rather walked with the supervisor to a cash machine to explain her side of the story.

When Damico arrived at the security area, he approached the security officer who was holding the confiscated bill. Damico inspected the bill with him, then said to Goscicki "Where the hell did you get that? That looks fake. Right?" App. 165, 167.

Eventually, Buch arrived on the scene. He asked Goscicki for her other money, which he inspected, and then did the same for Damico's remaining $100 bill. Buch then checked all five bills he had confiscated through the "US Secret Service US Dollar Note" website. Each of the bills was identified on the website as "known counterfeits." App. 60. Damico and Goscicki were then read their *Miranda* rights, charged with forgery and conspiracy to commit forgery, and taken by the Chester Police Department to a holding cell.

The Pennsylvania State Police sent four of the $100 bills to the Secret Service for further examination. In a letter received by the police on November 19, 2012, the Secret Service determined that all of the bills were genuine. The forgery charges against Damico and Goscicki were withdrawn in January 2013.

Damico then sued Buch, Harrah's, the Pennsylvania State Police and the Pennsylvania State Gaming Board. Damico's complaint included 17 different claims, ranging widely from federal actions pursuant to 42 U.S.C. § 1983 to state common law torts to an employment discrimination claim under the Americans with Disabilities Act. After Damico filed a Second Amended Complaint, the District Court dismissed the

claims against the State Police, the Gaming Board, and Buch in his official capacity on sovereign immunity grounds. The remaining defendants then moved for summary judgment. Although Damico failed to provide the necessary information to oppose summary judgment, including any citations to record evidence, Fed. R. Civ. P. 56(c), or the necessary response to the defendants' statement of material facts, Scheduling Order *available at* https://www.paed.uscourts.gov/documents/procedures/padpolb.pdf, the Court reviewed the record on its own to adjudicate the motion on the merits.

Even so, the District Court granted summary judgment for defendants on all counts in a thorough opinion. The Court found that Buch had probable cause to arrest Damico based on the appearance of the bills, Goscicki's alleged behavior when confronted by the Harrah's cage supervisor, and most importantly, the results from the Secret Service website. Because Buch had probable cause, none of the federal claims against Buch could proceed. The District Court also found that, in the alternative, Buch had qualified immunity. The state law claims against Buch were dismissed on the basis of sovereign immunity, which the state had not waived in this context. Because Harrah's was not acting under the color of state law, the District Court granted summary judgment on all § 1983 claims against it. Finally, the District Court mapped out the elements of the various remaining state law and ADA claims against Harrah's, finding that there were no facts in the record to support any of those claims.

4

## II.    STANDARD OF REVIEW[1]

We exercise plenary review over a grant of summary judgment. *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 218 (3d Cir. 2015). A court should grant summary judgment if "after it considers all probative materials of record, with inferences drawn in favor of the non-moving party, the court is satisfied that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id*. The party opposing summary judgment must show more than doubt and speculation as to the material facts; it must "point to specific factual evidence showing that there is a genuine dispute on a material issue requiring resolution at trial." *Id.*

## III.    ANALYSIS

Although Damico's complaint was wide-ranging, his appeal is more limited. His brief addresses only whether Buch had probable cause, whether Buch had qualified immunity and whether Harrah's acted under color of state law. He also argues that there are genuine disputes of material fact generally which prevent summary judgment overall. As such, the remaining issues—including all state law claims—are abandoned on appeal.[2] *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993).

---

[1] The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. This is an appeal from a final judgment and this court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

[2] At various points in passing, Damico suggests that Appellees improperly sought a continuance in his case, and that Appellees improperly seized a $100 bill from him without returning it. These allegations are not relevant to the claims originally included in the Second Amended Complaint and their legal import is unclear at best. Regardless, "arguments raised in passing . . ., but not squarely argued, are considered waived."

5

We begin with probable cause. "The test for an arrest without probable cause is an objective one, based on the facts available to the officers at the moment of arrest." *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994) (internal quotation marks and citations omitted). "Evidence that may prove insufficient to establish guilt at trial may still be sufficient to find the arrest occurred within the bounds of the law." *Id*. An arrest is justified based on probable cause so long as the arresting officer "had some reasonable basis" to believe that the detainee had committed a crime. *Id.* Put differently, we must inquire "whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Snell v. City of York*, 564 F.3d 659, 671 (3d Cir. 2009) (quoting *United States v. Burton*, 288 F.3d 91, 98 (3d Cir. 2002)).

Here, no reasonable jury could find that Buch lacked probable cause at the time of arrest. He had personally inspected the currency and found it to be suspicious—a belief that Damico himself shared. He had been told that Goscicki had attempted to run away when she was confronted with the possibility that the bills were counterfeit, certainly behavior which a reasonable person could find indicative of criminality under these circumstances. Most importantly, he had received a preliminary indication from the Secret Service that the bills were known counterfeits. "[I]nformation received from other

*Goldman v. Citigroup Global Markets, Inc.*, 834 F.3d 242, 248 n. 5 (3d Cir. 2016) (quoting *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997)).

6

law enforcement officials during the course of an investigation is generally presumed to be reliable." *United States v. Yusuf*, 461 F.3d 374, 385 (3d Cir. 2006). We see no reason to disturb that presumption here and no reason why Buch should not have relied on the Secret Service's online search tool.[3]

Damico's arguments to the contrary do not raise a genuine dispute of material fact as to probable cause. Damico contends that the burden of proof for probable cause rests on the defendant. *See Losch v. Borough of Parkesburg*, 736 F.2d 903, 909 (3d Cir. 1984). Where the burden rests is irrelevant here, though, as Buch has put forth considerable evidence of probable cause. Damico suggests that Buch's burden requires him to have put forward additional evidence. In particular, Damico is concerned with a missing $100 bill—only four of the five bills were run through the Secret Service website and Damico contends that the bill originally confiscated from Goscicki went missing. He also believes that Appellees failed to meet their burden of production because they failed to produce a surveillance video from the casino.[4] But probable cause need only be established for "any offense that could be charged under the circumstances." *Barna*, 42 F.3d at 819. Buch needed probable cause only to believe that one of Damico's bills was

---

[3] Damico intimates that this search may have been fabricated by Buch. As the District Court noted, however, there is no record evidence for this claim, which is contradicted by Buch's Affidavit of Probable Cause.

[4] We previously denied a motion to expand the record to include this surveillance video. Damico suggests that the surveillance video would show that Goscicki did not run from the Harrah's staff. He also suggests that it would determine whether the officer read them *Miranda* rights, the significance of which is not stated and at this juncture is not relevant because Damico testified that he received his *Miranda* rights.

counterfeit. Moreover, once probable cause is established, an officer is "not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 n.8 (3d Cir. 2000). Because Buch had established probable cause based on some of the bills, the remaining bills are not material to the probable cause determination, as is true regarding any video footage.

To the extent that Damico also argues that factual mistakes by Buch negate probable cause, this too is not material. Even though the bills turned out not to be counterfeit, Buch had good reason to believe they were at the time. Probable cause does not require that an officer's beliefs "were, in retrospect, accurate" but rather looks to whether their beliefs were "not unreasonable in light of the information the officers possessed at the time." *Wright v. City of Philadelphia*, 409 F.3d 595, 603 (3d Cir. 2005). Likewise, even if the Harrah's staff misinformed Buch about Goscicki's behavior—if she did not attempt to run from them—what matters is what they told Buch and whether he had good reason to disbelieve them. The record evidence shows that Buch was informed that Goscicki had run and shows no reason for him to think otherwise.

Because we find that Buch had probable cause to arrest Damico, his federal claims must be dismissed. As such, we need not reach the question of qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (permitting courts to decide whether a constitutional violation occurred before addressing qualified immunity, particularly when

8

it is "apparent that in fact the relevant facts do not make out a constitutional violation at all").

Turning to Harrah's claims, we also find that Harrah's did not act under color of state law. Section 1983 provides a remedy for deprivations of rights that take place "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. The Third Circuit has found three ways in which a private entity may be held to be a state actor, such that it can be liable under § 1983: "(1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotation marks omitted).

Under any of these tests, the ultimate inquiry is whether "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Id.* (quoting *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005)). We find it clear from the record that there is no evidence that under any of the three tests that Harrah's was effectively acting as the State. There is no evidence that Harrah's forced the police to arrest Damico or that the police forced Harrah's to detain Damico, for example. Additionally, there is no evidence suggesting

9

that Harrah's behaved in any way other than that of an ordinary business employing its own security guards.

More to the point, the Third Circuit has established a test for private § 1983 liability in the highly analogous area of shoplifting. A shopkeeper who calls the police on a shoplifter can only be liable under § 1983 if "(1) the police have a pre-arranged plan with the store; and (2) under the plan, the police will arrest anyone identified as a shoplifter by the store without independently evaluating the presence of probable cause." *Cruz v. Donnelly*, 727 F.2d 79, 81 (3d Cir. 1984). In this context, a casino's detention of a person for using counterfeit bills is no different from a store's detention of a person for shoplifting; we therefore apply *Cruz* here. Because there was no plan providing that the police would arrest anyone identified as a counterfeiter by Harrah's,[5] Harrah's cannot be held to be a state actor in this context.

Finally, Damico argues that the District Court should not have granted summary judgment because there were outstanding disputes of material fact in the case. He points to disputes over whether the originally-confiscated bill was ever identified as a counterfeit in the Secret Service system; whether the various $100 bills were originally withdrawn from a Harrah's ATM; and whether Goscicki grabbed the bills and ran after being confronted with the suspicion of counterfeiting. These factual disputes, even if genuine, are not material. "Only disputes over facts that might affect the outcome of the

---

[5] Indeed, the record indisputably shows Buch conducting his own investigation and evaluation of probable cause upon his arrival.

10

suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As already described, Buch would have had probable cause regardless of how these factual disputes might be resolved. These disputes may go to the ultimate innocence of Damico, but not whether Buch had probable cause at the time of arrest.

## IV. CONCLUSION

Based upon the record evidence, any reasonable jury would find that Buch had probable cause and that Harrah's was not a state actor. We therefore affirm.