683 F.2d 635
 Virginia L. BONSIGNORE, individually and as Administratrix
of the Estate of Blase A. Bonsignore, deceased,
Plaintiff-Appellee-Cross-Appellant,
v.
The CITY OF NEW YORK, Defendant-Appellant-Cross-Appellee.
 No. 637, Docket 81-7733.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 8, 1982.
Decided June 15, 1982.
 
 Leonard Mentzer, New York City (Allen G. Schwartz, Corp. Counsel of the City of New York, Raymond S. Carroll, Walter F. Benson, New York, N. Y., on the brief), for defendant-appellant-cross-appellee.
 James Sawyer, Great Neck, N. Y. (Martin, Van de Walle & Sawyer, Great Neck, N. Y., on the brief), for plaintiff-appellee-cross-appellant.
 Before OAKES, NEWMAN and PIERCE, Circuit Judges.
 NEWMAN, Circuit Judge:
 
 
 1
 This diversity case requires consideration of both negligence and proximate cause in the context of an unusual factual setting. Virginia Bonsignore sued the City of New York for damages and wrongful death for its negligence in requiring her husband, a member of the New York City Police Department, to carry a gun at all times while within City limits. On December 20, 1976, Officer Bonsignore, using his .32 caliber "off-duty" revolver, shot and seriously wounded his wife and then committed suicide by shooting himself in the head; as a result of the shooting, Mrs. Bonsignore sustained brain damage and serious motor dysfunction. Although the jury rejected Mrs. Bonsignore's claim against the City for causing her husband's wrongful death, it awarded her $300,000 compensatory damages and $125,000 punitive damages on her claim for negligently causing her injuries. The City moved for a judgment n.o.v. or, in the alternative, for a new trial, contending that the verdict was not supported by the evidence and was unreasonable as a matter of law. The District Court for the Southern District of New York (Abraham D. Sofaer, Judge) denied the City's motion, Bonsignore v. City of New York, 521 F.Supp. 394 (S.D.N.Y.1981), and the City appeals.
 
 
 2
 The City's principal contention on appeal is that the jury erred in finding it negligent. The evidence was submitted to the jury on two theories of negligence: whether "under the circumstances (the City) reasonably should have known that Mr. Bonsignore was dangerous and should not have been permitted to carry a gun" or whether the City had failed to "adopt or implement a sufficiently effective program of psychological screening and monitoring of police officers," Tr. at 808. With regard to the second theory, the Court instructed the jury that the City has broad discretion in deciding "what institutional mechanisms to adopt to identify officers unfit to carry guns," id. at 809, and cannot be held liable because the system it chose appears imperfect or insufficient or because the jury would have chosen a different system. Rather, the jury must find that the City
 
 
 3
 "failed to address itself with due diligence prior to December, 1976 to the problem of reasonably ensuring that police officers are fit to carry guns without endangering themselves or the public," or if "the measures adopted for that purpose were so deficient that no reasonable person could have accepted the City's judgment."
 
 
 4
 Bonsignore v. City of New York, supra, 521 F.Supp. at 397 (quoting Tr. at 809).
 
 
 5
 The jury by special verdict found the City negligent based on this second theory, and there was substantial evidence to support the jury's finding. The City had instituted several programs in an effort to identify and counsel policemen suffering from some mental or emotional disability. The "Early Warning System" was intended to identify problem officers by the use of centrally maintained files, on which such information as excessive sick leave, complaints, and poor performance evaluations would be noted by placing colored dots manually on the files. However, the jury could have found that the Early Warning System was ineffectual for several reasons. First, the characteristics monitored by the use of colored dots were never validated as reliable indicators of mental or emotional problems in police officers. In addition, the evidence indicated that a "code of silence" among policemen, which inhibits an officer from reporting on or in any way causing harm to a fellow officer, doomed the system, since it relied in great measure on affirmative reporting by policemen. Finally, the Early Warning System did not work as a practical matter. Bonsignore was never identified as a problem officer, despite his displaying many of the signs that should have flagged him as having mental or emotional problems, such as excessive sick leave, incomplete performance reports, and assignment as the Nineteenth Precinct's attendant (or "broom"), a limited-duty assignment, for thirteen years.
 
 
 6
 Although the City developed other programs to identify violence-prone officers, officers who used excessive force, and officers who were involved in a large number of auto accidents, the jury was entitled to find that the City either dropped these programs or never fully implemented them. Moreover, there was no evidence that the City reviewed and evaluated the adequacy of the programs that were implemented. The City did show that 1500 of the 25,240 Police Department members had been examined by a psychiatrist, psychologist, or alcoholism counselor in 1976 and that 800 officers were subjected to constant monitoring, but this evidence, while significant, did not preclude the jury from reasonably concluding that the City was negligent because of deficient procedures in regard to identifying police officers who should not carry weapons.
 
 
 7
 The jury also could have reasonably found that the City's negligence was the proximate cause of Mrs. Bonsignore's injuries. Proximate cause, which reflects a judgment regarding the permissible extent of liability for negligence, limits a defendant's liability to those foreseeable consequences that the defendant's negligence was a substantial factor in producing.[1] See Derdiarian v. Felix Contracting Corp., 51 N.Y.2d 308, 314-15, 414 N.E.2d 666, 670, 434 N.Y.S.2d 166, 169 (1980). In this case the consequences of the City's negligence were foreseeable within a degree of acceptability recognized in New York law, see Derdiarian v. Felix Contracting Corp., supra; Nallan v. Helmsley-Spear, Inc., 50 N.Y.2d 507, 520-21, 407 N.E.2d 451, 459, 429 N.Y.S.2d 606, 614-15 (1980); Pagan v. Goldberger, 51 A.D.2d 508, 382 N.Y.S.2d 549 (2d Dep't 1976), and did not approach that degree of attenuation condemned in Palsgraf v. Long Island Railroad, 248 N.Y. 339, 162 N.E. 99 (1928). The fact that Mrs. Bonsignore's injuries were immediately caused by the affirmative act of Officer Bonsignore does not relieve the City of responsibility. "Where the acts of a third person intervene between the defendant's conduct and the plaintiff's injury, the causal connection is not automatically severed. In such a case, liability turns upon whether the intervening act is a normal and foreseeable consequence of the situation created by the defendant's negligence ...." Derdiarian v. Felix Contracting Corp., supra, 51 N.Y.2d at 315, 414 N.E.2d at 670, 434 N.Y.S.2d at 169; see Nallan v. Helmsley-Spear, Inc., supra, 50 N.Y.2d at 520-21, 407 N.E.2d at 459, 429 N.Y.S.2d at 614; Restatement (Second) of Torts §§ 448-449 (1965).
 
 
 8
 In this case both the type of harm that occurred and the person on whom the injury was inflicted were foreseeable. The City could reasonably have anticipated that its negligence in failing to identify officers who were unfit to carry guns would result in an unfit officer injuring someone using the gun he was required to carry. Furthermore, it was reasonably foreseeable that such an officer would injure a member of his own family. "An intervening act may not serve as a superseding cause, and relieve an actor of responsibility, where the risk of the intervening act occurring is the very same risk which renders the actor negligent." Derdiarian v. Felix Contracting Corp., supra, 51 N.Y.2d at 316, 414 N.E.2d at 671, 434 N.Y.S.2d at 170. Since the City was negligent precisely because of the risk posed to other policemen and members of the public by requiring all officers, without adequate screening, to be armed at all times, the District Court did not err in denying the City's motion for judgment n.o.v. or a new trial.
 
 
 9
 The City also argues that the jury's verdicts awarding Mrs. Bonsignore damages on her negligence claim after denying recovery on her wrongful death claim were so inconsistent that the District Court erred in denying the City's motion for judgment n.o.v. or, in the alternative, a new trial. This claim is without merit. While the jury could have concluded that the City's failure to adopt a reasonable program to screen violence-prone officers was the proximate cause of Mrs. Bonsignore's injuries, the jury also could have concluded that Officer Bonsignore would have committed suicide even if the City had identified him as a problem officer and had removed his gun.
 
 
 10
 We reject the City's objection to the award of $125,000 punitive damages. New York law on municipal liability for punitive damages is not clear, compare Sharapata v. Town of Islip, 82 A.D.2d 350, 441 N.Y.S.2d 275 (2d Dep't 1981) (punitive damages are not available against a municipality), cited with approval in LaBelle v. County of St. Lawrence, A.D., 445 N.Y.S.2d 275 (3d Dep't 1981), with Bevilacqua v. City of Niagara Falls, 66 A.D.2d 988, 411 N.Y.S.2d 779 (4th Dep't 1978) (assuming that New York law allows punitive damages against a municipality); see also, Williams v. City of New York, 508 F.2d 356 (2d Cir. 1974) (same). In this diversity case, we decline to anticipate the ultimate resolution of this issue, since the City failed to object at trial to the jury instructions on punitive damages. See Fed.R.Civ.P. 51.
 
 
 11
 Finally, Mrs. Bonsignore cross-appeals from the denial of her motion to amend her complaint to include a claim under 42 U.S.C. § 1983. The District Court was correct in denying this motion. Officer Bonsignore, who was off-duty when he shot his wife, was not acting under color of state law since his actions were not "committed in the performance of any actual or pretended duty," Johnson v. Hackett, 284 F.Supp. 933, 937 (E.D.Pa.1968), but were performed "in the ambit of (his) personal pursuits," Screws v. United States, 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495 (1945) (plurality opinion); see Stengel v. Belcher, 522 F.2d 438, 439, 441 (6th Cir. 1975), cert. dismissed, 429 U.S. 118, 97 S.Ct. 514, 50 L.Ed.2d 269 (1976) (per curiam ).
 
 
 12
 The judgment of the District Court is affirmed.
 
 
 
 [1]
 Even an unforeseeable consequence can be the basis for liability when such a consequence "follow(s) an impact upon the person of the plaintiff." W. Prosser, The Law of Torts § 43, at 261 (4th ed. 1971)