**Juanita HUDSON, a Personal Representative of the Estate of Adam Hudson, and Juanita Hudson, Individually, Plaintiffs,**

v.

**Darryl MAXEY, Wayne County Sheriff's Department, and Wayne County, Defendants.**

**No. 93–CV–71418–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

July 1, 1994.

Dennis Fuller, Southfield, MI, for plaintiff Hudson.

John DeMoss, Mt. Clemens, MI, for plaintiff BCBSM.

Steve Pearson, Detroit, MI, for defendants.

### OPINION AND ORDER GRANTING THE WAYNE COUNTY DEFENDANTS' MOTION TO DISMISS/FOR SUMMARY JUDGMENT

ROSEN, District Judge.

### I.  INTRODUCTION

This Section 1983 action is presently before the Court on the Motion to Dismiss/for Summary Judgment filed by Wayne County and the Wayne County Sheriff's Department.[1]

Having reviewed and considered the parties' respective briefs, and having heard the

---

1. Default has been entered against individual Defendant Maxey for failure to answer or otherwise plead. With respect to Defendant Wayne County Sheriff's Department, Plaintiff stipulates to the dismissal of the Sheriff's Department in his "Answer in Opposition to Defendants' Motion to Dismiss".

oral arguments of the parties' attorneys at the hearing held on June 30, 1994, the Court is now prepared to rule on Defendant's Motion. This Opinion and Order sets forth that ruling.

## II. PERTINENT FACTS

The pertinent facts of this case are not in dispute.[2]

On August 11, 1992, Darryl Maxey, an off-duty Wayne County Sheriff,[3] spent the night at the home of his girlfriend, Kim McCain. Maxey and McCain were in bed when at approximately 2:30 a.m. there was a loud pounding on the door of the residence. The pounding continued and was eventually accompanied by someone yelling out Kim's name. Kim told Maxey that it was her ex-boyfriend, Adam Hudson.[4] Maxey jumped out of bed, put his pants on, grabbed his gun[5] and put it in his pants' pocket, and headed for the front door. Kim also got out of bed and followed Maxey.

When Maxey got to the living room he found Adam Hudson climbing into the house through the living room window. Hudson had knocked out the window screen to get in the house. Once in the house, Hudson ran to Kim and started hitting her in the face with his fist. Maxey took his gun out of his pocket and told Hudson to stop. He then asked Hudson if he knew who he was and what he did for a living. Hudson answered, "Yeah, you're a sheriff." Maxey told Hudson that he had just broken into the house and assaulted Ms. McCain, and that he had better leave. Kim also asked Hudson to leave. Hudson refused to leave and said, "Go on ahead and shoot me."

Maxey repeated his request, "Adam, please man, just leave out the door." Hud-son opened the front door, but then turned and said he wasn't leaving; he told Maxey, "Arrest me." Maxey said, "OK, get down on the floor." Hudson did not get down on the floor. He told Maxey again that he would have to shoot him.

When Hudson turned his back on Maxey, Maxey pushed him out the door. Maxey went outside with Hudson, following him to his van which was parked in the street. Suddenly, Hudson said, "Fuck this shit," and abruptly lunged back toward Maxey. Maxey had his gun in his hand and "instinctively" stuck his hand out to ward off Hudson's attack. Apparently, Maxey had his finger on the trigger and when Hudson lunged at him, Maxey pulled the trigger. One shot was fired and struck Hudson in the neck. Maxey administered first aid until EMS arrived and took Hudson to Grace Hospital. He was subsequently transferred to Receiving Hospital where he died three days later, on August 14, 1992.

On December 19, 1992, Maxey was arraigned before a state court magistrate.[6]

On February 8, 1993, Plaintiff initiated this lawsuit in Wayne County Circuit Court. Defendants Wayne County and Wayne County Sheriff's Department were served with copies of the Summons and Complaint on March 4, 1993, and on April 1, 1993, they removed the action to this Court. The sole basis for federal court jurisdiction is federal question jurisdiction under 42 U.S.C. § 1983.[7]

## III. DISCUSSION

### A. STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Although filed as a Fed.R.Civ.Pro. 12(b)(6) "Motion to Dismiss", because both parties

---

**2.** These facts are taken from the Detroit Police Department records of the incident, in particular, Darryl Maxey's Witness Statement, and the Police Investigator's Report [attached as Exhibits to Plaintiff's Response Brief.].

**3.** Maxey's duty assignment with the Sheriff's Department at the time of the events giving rise to this action was that of "Back Gate Officer" at the Wayne County Jail.

**4.** Hudson was also the father of Kim McCain's child.

**5.** Maxey had with him that night his personal "off-duty" revolver, not his service revolver.

**6.** It is not clear whether Maxey was charged with murder or manslaughter.

**7.** In addition to Plaintiff's Section 1983 claim, Plaintiff also alleges state law claims of negligence, gross negligence, violation of the Michigan state constitution. Plaintiff further alleges one count of assault and battery against Defendant Maxey, only.

have relied upon, and have submitted for the Court's consideration, materials "outside the pleadings", Fed.R.Civ.Pro. 12(b) directs that in such a case, the motion is to be treated as a Rule 56 motion for summary judgment.

Summary judgment is proper " 'if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " Fed.R.Civ.P. 56(c).

Three 1986 Supreme Court cases—*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)—ushered in a "new era" in the standards of review for a summary judgment motion. These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[8] According to the *Celotex* Court,

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment. They are summarized as follows:

> * Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
>
> * The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> * The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."
>
> * The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.
>
> * The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989).

The Court will apply the foregoing standards in deciding Defendant's Motion in this case.

### B. THE MERITS OF PLAINTIFF'S FEDERAL CLAIM

As discussed above, Plaintiff has alleged a federal claim for deprivation of constitutional rights in violation of 42 U.S.C. § 1983.

■ A threshold issue in any Section 1983 action is whether there was any "state action" involved. In this case, the specific question presented regarding this issue is whether Defendant Maxey was "acting under color of law" at the time of the incident complained of.

It is undisputed that Defendant Maxey was not "on duty" at the time of the events in question. Plaintiff's "color of state law" argument is predicated upon the facts that (1) when Maxey encountered Hudson climbing through the window of Ms. McCain's home, he had his gun drawn; (2) Maxey asked Hudson if he knew what he (Maxey) did for a

---

**8.** "Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials." 10A C. Wright, A. Miller, M. Kane, *Federal Practice & Procedure,* § 2727, at 33 (1993 Supp.).

living and Hudson answered, "Yeah, you are a sheriff"; (3) Maxey told Hudson to leave McCain's house; and (4) when Hudson refused to leave and said, "Arrest me", Maxey responded, "OK, get down on the floor."[9] [Plaintiff's Brief, p. 8.] Plaintiff contends that these facts demonstrate that Maxey was "exercising his authority as a sheriff's deputy." *Id.*

The Sixth Circuit dealt with the issue of Section 1983 liability of an "off-duty" police officer in *Stengel v. Belcher,* 522 F.2d 438 (6th Cir.1975), *cert. dismissed,* 429 U.S. 118, 97 S.Ct. 514, 50 L.Ed.2d 269 (1976). However, the circumstances of that case are substantially different from the facts presented in this case.

In *Stengel,* an off-duty, out-of-uniform, police officer, Raymond Belcher, interjected himself into an altercation between two other private parties at a bar. Equipped with a can of mace (issued to him by the police department) and with his gun drawn, Belcher attempted to break up the fight. He pushed one of the fighting parties, Stengel, to the ground to restrain him. Stengel rolled over and kicked the can of mace out of Belcher's hand and Belcher shot him. The case went to trial and the jury found that Belcher was acting under color of state law.

Although the Court of Appeals found that the issue of "acting under color of state law" should have been decided by the district court before trial as a matter of law, because no objection to the submission of the issue to the jury was made, and because the court found that the trial evidence "abundantly support[ed] the jury's verdict", the appellate court affirmed the jury's determination. With respect to the "acting under color of law" requirement, the *Stengel* court explained:

> Acts of police officers in the ambit of their personal, private pursuits fall outside of 42 U.S.C. § 1983. *Monroe v. Pape,* 365 U.S. 167, 185, 81 S.Ct. 473, [483,] 5 L.Ed.2d 492 (1961); *Screws v. United States,* 325 U.S. 91, 111, 65 S.Ct. 1031, [1040,] 89 L.Ed. 1495 (1945).

However, "[a]cts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it." *Screws, supra,* at 111, 65 S.Ct. at 1040. The fact that a police officer is on or off duty, or in or out of uniform is not controlling. "It is the nature of the act performed, not the clothing of the actor or even the status of being on duty or off duty, which determines whether the officer has acted under color of law." *Johnson v. Hackett,* 284 F.Supp. 933, 937 (E.D.Pa.1968).

522 F.2d at 441.

In *Stengel,* the evidence presented not only included the officer's use of mace and a pistol issued by the police department, but also included the testimony of the chief of police that, when faced with an incident posing a potential harm to the public, an officer is required to taken action "in any type of police or criminal activity 24 hours a day". 522 F.2d at 441. The evidence further included an explicit determination by the police department in its internal affairs investigation of the incident making "a specific finding that [Officer Belcher's] actions *were [performed] in the line of duty.*" *Id.* The Sixth Circuit was satisfied that this evidence cumulatively established that Defendant Belcher was acting under color of state law at the time of the incident complained of. *Id.*

The instant case factually more closely resembles the Fifth Circuit case of *Delcambre v. Delcambre,* 635 F.2d 407 (5th Cir.1981). That case involved a personal dispute similar to the instant action. In *Delcambre,* the plaintiff, Amy Delcambre, and her brother-in-law, L.E. Delcambre, who was the chief of police of a town in Louisiana, got into an argument over family and political matters. That argument mushroomed into an altercation on the premises of the police station. L.E. Delcambre was on duty at the time of the altercation. He restrained and assaulted his sister-in-law. However, he did not arrest her or threaten her with arrest. Plaintiff sued both L.E. Delcambre and the municipal-

---

9. It is uncontested, however, that Maxey did not pursue Hudson's arrest request, force him to the floor, or restrain him.

ity alleging a federal claim of deprivation of civil rights under Section 1983 and several pendent state law claims. The district court dismissed the Section 1983 on the merits, and in light of that dismissal, declined to retain pendent jurisdiction over the state law claims. The Fifth Circuit affirmed. With respect to dismissal of the Section 1983 claim, the *Delcambre* court explained,

> Amy Delcambre failed to prove a cause of action under 42 U.S.C. § 1983. Although Chief Delcambre allegedly assaulted Amy Delcambre on the premises of the municipal police station, it is clear that he was not acting under color of law as required for liability under that statute.

635 F.2d at 408.

In *Bonsignore v. City of New York,* 683 F.2d 635 (2d Cir.1982), an off duty New York City policeman, using his "off duty" revolver, shot and seriously wounded his wife, and then committed suicide. Mrs. Bonsignore sued the city, originally asserting only a negligence theory, but later sought to amend her complaint to include a Section 1983 claim. The district court denied her motion to amend her complaint. The Second Circuit affirmed that denial.

Citing the same authorities cited by the Sixth Circuit in *Stengel, supra,* the *Bonsignore* court explained:

> The District Court was correct in denying this motion. Officer Bonsignore, who was off-duty when he shot his wife, was not acting under color of state law since his actions were not "committed in the performance of any actual or pretended duty," *Johnson v. Hackett,* 284 F. Supp. 933, 937 (E.D.Pa.1968), but were performed "in the ambit of [his] personal pursuits," *Screws v. United States,* 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495 (1945) (plurality opinion); *see Stengel v. Belcher,* 522 F.2d 438, 439, 441, (6th Cir.1975), *cert. dis-*

*missed,* 429 U.S. 118, 97 S.Ct. 514, 50 L.Ed.2d 269 (1976) (*per curiam*).

683 F.2d at 638–639.

■ Thus, the focus of analysis must be the nature of the defendant officer's actions and the factual context out of which those actions arose. In order for liability to attach, the action alleged by the plaintiff to be "under color of law" must be pursuant to some official duty or function of the officer and the factual context must be one which might reasonably be expected to require the intervention of the state through one of its agencies.

Here, the Court finds the instant case to present actions, which, like *Bonsignore* and *Delcambre,* involve personal actions, not actions "committed in the performance of any actual or pretended duty." Unlike the *Stengel* in which the police officer attempted to break up an altercation between two other private citizens in a public facility, this case involved only a love triangle in which the deputy sheriff was one of the parties. Unlike *Stengel,* there is no evidence in this case that in defending his girlfriend from the assault by Hudson, Maxey was acting "pursuant to a duty imposed by [sheriff's] department regulations." While the shooting of Plaintiff's decedent is tragic, this private matter of domestic violence does not rise to the level of a constitutional deprivation.[10]

■ Furthermore, even if the Court were to find "state action", the Court would, nonetheless, find that Plaintiff has failed to make out a Section 1983 claim against the County. The County cannot be held liable under § 1983 on a *respondeat superior* theory. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Liability under § 1983 may only be found if the municipality has a policy, practice, or custom that resulted in the violation of constitutional rights. *Id.,* 436 U.S. at 692, 98 S.Ct. at 2037.

Proof of a single incident of an unconstitutional activity is not sufficient to impose

10. As conceded by both the County's and the Plaintiff's counsel at the June 30, 1994 hearing on this matter, the Court's finding of no "state action" is also applicable to Plaintiff's state law claims against the County which are predicated

solely upon a *respondeat superior* theory of recovery. For the same reasons stated in this Opinion and Order with respect to Plaintiff's Section 1983 claims, the Court will DISMISS Plaintiff's state law claims, as well.

liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing unconstitutional policy, which policy can be attributed to a municipal policymaker.

*City of Oklahoma v. Tuttle,* 471 U.S. 808, 820, 105 S.Ct. 2427, 2435, 85 L.Ed.2d 791 (1985).

Thus, in the instant case, for *Monell* liability to attach, Plaintiff must establish that the official policy of Wayne County was the moving force of the alleged constitutional violations. Plaintiff has not met this burden.

Similarly, to the extent that Plaintiff is alleging a "failure to train" theory under *City of Canton v. Harris,* 489 U.S. 378, 387, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989), that claim, too, must fail. As the Supreme Court explained in *City of Canton,*

> The inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the persons with whom the police come in contact.

489 U.S. at 388, 109 S.Ct. at 1204.

It is not sufficient to give rise to municipal liability for the plaintiff to merely show that a particular officer was unsatisfactorily trained. *Walker v. Norris,* 917 F.2d 1449, 1456 (6th Cir.1990). Nor is it sufficient for a Plaintiff to prove that an injury, accident or incident could have been avoided if an officer had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. *Id. See also, Lewis v. City of Irvine,* 899 F.2d 451, 455 (6th Cir.1990).

Plaintiff has not come forward with any evidence to satisfy the *Monell/City of Canton* requirements. Rather, all that she has produced is the last-minute affidavit of her retained "expert" who states:

> 5. I have formed various opinions regarding the possible factors which combined to cause the death of Adam Hudson at the hands of Defendant Maxey.
> 6. That my opinions in this regard include, but are not limited to the opinion that Defendant Wayne County should not have allowed Defendant Maxey to attend Police Academy Training, due to his previ-

ous job performance as a correctional officer; the opinion that Defendant County's failure to institute yearly evaluation programs or procedures led to the retention of Defendant Maxey as Deputy, who should not have been retained as such, and the continued grant of authority for Defendant Maxey to carry firearms; and that Defendant County, in retaining Defendant Maxey as Deputy, and thereby authorizing him to carry weapons on and off duty, caused the death of Adam Hudson.

[June 9, 1994 Affidavit of Frederick J. Postill.]

Plaintiff's expert's opinion that Maxey should not have been trained as a police officer clearly does not satisfy the "failure to train" requirements of *City of Canton* and its progeny.

### CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that the Wayne County Defendants' Motion for Summary Judgment be, and hereby, is GRANTED. Accordingly,

IT IS FURTHER ORDERED the Plaintiff's claims against Wayne County and the Wayne County Sheriff's Department are hereby DISMISSED in their entirety, with prejudice.