Donald VAN ORT;  Helen Van Ort, Plaintiffs–Appellants,

v.

ESTATE OF Michael STANEWICH, deceased;  Anna L. Prevost, as Special Administratrix of the Estate of Michael Stanewich;  County of San Diego;  San Diego County Sheriff's Department, Defendants–Appellees.

Donald VAN ORT;  Helen Van Ort, Plaintiffs–Appellees,

v.

Anna L. PREVOST, as Special Administratrix of the Estate of Michael Stanewich;  County of San Diego;  San Diego County Sheriff's Department, Defendants,

and

Estate of Michael Stanewich, deceased, Defendant–Appellant.

Nos. 94–56766, 95–55284.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 8, 1996.

Decided Aug. 6, 1996.

Erwin Chemerinsky, University of Southern California Law Center, Los Angeles, California; Dwight Ritter, San Diego, California, for the plaintiffs-appellants-cross-appellees.

Greg J. Ryan, Sparber, Ferguson, Naumann, Ponder & Ryan, San Diego, California, for defendant-appellee-cross-appellant, Estate of Stanewich.

Ricky R. Sanchez, Deputy County Counsel, San Diego, California, for the defendant-appellee.

Before: WALLACE and T.G. NELSON, Circuit Judges, and BROWNING,* District Judge.

* Honorable William D. Browning, United States District Judge, District of Arizona, sitting by designation.

WALLACE, Circuit Judge:

Donald Van Ort and his grandmother, Helen (the Van Orts), appeal from the district court's judgment reversing a jury verdict in their favor. The Van Orts also appeal from the district court's judgment against them on their state law negligence claims.

The Estate of Stanewich (Estate) joins in the Van Orts' appeal of the district court's rulings on the federal civil rights and state law negligence claims. It separately appeals from the district court's denial of its motion to limit the Van Orts' claims to the insurance policy coverage.

The district court had jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand for entry of an amended judgment.

## I

San Diego County Sheriff's Deputy Michael Stanewich served as an area detective stationed at the San Diego Sheriff's Encinitas substation. His duties included undercover narcotics investigation.

On May 30, 1991, Stanewich and other officers conducted a narcotics search of the Van Orts' Encinitas residence. The officers found no contraband or illegal drugs, and the search resulted in no criminal prosecutions. During the course of the search, however, officers required Donald to open a safe which contained cash, jewelry, and coins.

Stanewich received permission to be off duty on the morning of July 3, when he returned to the Van Orts' home. The record gives two differing accounts as to what occurred. According to depositions submitted by the Van Orts, Stanewich forcibly entered their home. The depositions state that Stanewich wore blue jeans, a mask over his face, and latex gloves. They also state that Stanewich did not display his badge and denied being a police officer.

At trial, however, Donald gave a somewhat different account. He testified that, in response to the doorbell, he opened his front door slightly and recognized Stanewich. In this account, there was another individual accompanying Stanewich. Only after Donald recognized him did Stanewich put on a nylon mask, point a gun at Donald, and put on dark glasses. Donald then shouted, "It's a robbery, Grandma."

Both accounts agree, however, that Stanewich then attacked and tortured the Van Orts. He bound Donald, placed a pillowcase over his head and doused him with lighter fluid. He threatened to set him on fire unless he was given the combination to the safe. Stanewich then dragged Helen from room to room and demanded from her the safe's combination. Donald's girlfriend was in a bedroom and, upon Stanewich's entry, escaped to a neighbor's house where a 911 call was placed.

The responding police officer entered the home, twice ordered the intruder to "freeze," and shot Stanewich when he failed to comply. The officer then unmasked Stanewich, immediately recognized him and exclaimed, "Mike!" Stanewich responded, "Yes, it's me, I'm wrong," and died.

The Van Orts brought suit against Stanewich's estate, the County of San Diego (County), the San Diego Sheriff's Department, and others, seeking damages for mental and physical injuries pursuant to 42 U.S.C. § 1983 and several state laws. Before the August 1994, trial, the district court granted the County's motion for summary judgment on the Van Orts' federal and state claims for vicarious, respondeat superior liability. In reaching this conclusion, the district court found that Stanewich did not use his "authority as a peace officer ... to commit his misdeeds" and that "[n]o reasonable jury could conclude, under the facts of this case, that Michael Stanewich's assault and attempted robbery of plaintiffs on July 3, 1991 was anything but a substantial departure from his duties for purely personal reasons." The district court allowed the claims for direct liability for both the federal civil rights and state negligence causes of action to proceed to trial.

On September 8, 1994, after the close of all evidence but before the case went to the jury, the district court rendered a judgment as a matter of law on the Van Orts' state law negligence claim against the County. The district court concluded that Stanewich's supervisors and the County did not owe a duty to the Van Orts for Stanewich's actions outside of his scope of employment. Relying on its prior conclusion that Stanewich did not act within the scope of his duty, the district court ruled that the County owed no duty to the Van Orts and, therefore, they could not maintain a suit against the County based on state negligence law.

The district court allowed the jury to decide the federal civil rights claim under a direct liability theory. In a special verdict, the jury found the County's official policies were deliberately indifferent and caused "the deprivation of the plaintiffs' [constitutional] rights." The jury also found against the Estate.

After the verdict was returned, the County moved for judgment as a matter of law, which the district court granted. Declining to reconsider its finding that Stanewich was not acting under color of law, the district court examined the conditions under which a constitutional right exists to be free from harm inflicted by private actors. According to the district court, such a right exists where the government (1) abuses a "special relationship" it created with the plaintiff, which leads to injury inflicted by nongovernment actors; or (2) through affirmative conduct, places the plaintiff in danger. The district court concluded that neither of these conditions were met and, therefore, there was no "state liability for private-actor harm." It also ruled that the evidence did not support the jury findings of causality and deliberate indifference. The verdict against the Estate remained intact.

We review de novo the district court's judgment notwithstanding the verdict. *Bank of the West v. Valley Nat'l Bank of Ariz.*, 41 F.3d 471, 477 (9th Cir.1994). A judgment reversing the jury's verdict as a matter of law is appropriate when the evidence, construed in the light most favorable

to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's. *Vollrath Co. v. Sammi Corp.,* 9 F.3d 1455, 1460 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2163, 128 L.Ed.2d 886 (1994). We review de novo the district court's denial of the Estate's motion to limit the amount of recovery because the Estate's separate appeal is based on the Van Orts' failure to comply with the California probate statute, which presents a question of statutory law. *See Forest Conservation Council v. Rosboro Lumber Co.,* 50 F.3d 781, 783 (9th Cir.1995) (reviewing interpretation of statute de novo).

## II

Our analysis of municipal liability under section 1983 begins, of course, with *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Concluding that a municipality can be a "person" under section 1983, this benchmark opinion held that if the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury [then] the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2037–38. Based upon *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (*Canton*), we have stated four conditions that must be satisfied in order to establish municipal liability for failing to act to preserve constitutional rights: "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Oviatt v. Pearce,* 954 F.2d 1470, 1474 (9th Cir.1992) (*Oviatt*), *quoting Canton,* 489 U.S. at 389–91, 109 S.Ct. at 1205.

In *Canton,* the Supreme Court announced these requirements in the context of a negligent training claim. They have since been applied to negligent supervision and hiring claims, too. *See Davis v. City of Ellensburg,* 869 F.2d 1230, 1235 (9th Cir.1989) (negligent supervision); *Benavides v. County of Wilson,* 955 F.2d 968, 972 (5th Cir.) (negligent hiring), *cert. denied,* 506 U.S. 824, 113 S.Ct. 79, 121 L.Ed.2d 43 (1992). We apply the *Canton* analysis here to the Van Orts' claims of negligent training, supervision, and monitoring.

The district court concluded that the Van Orts failed to satisfy the first, third, and fourth requirements of *Oviatt.* We may affirm the district court's judgment notwithstanding the verdict if its conclusion on any one of the *Oviatt* requirements is correct.

The district court first held that because Stanewich did not act under color of law, he did not deprive the Van Orts of a constitutional right: they have a right to be free only from deprivations committed under color of state law, not those committed by private actors. The Van Orts assert that it is irrelevant whether Stanewich acted under color of state law. As long as the jury found that the County's policies and procedures (i.e. its failure to train, supervise, and monitor police officers properly) caused the Van Orts' injuries, then the Van Orts argue that they have established *Monell* liability.

■ This is a novel argument. Whether the actual individual who inflicted the injuries acted under color of state law is often a threshold question. Individuals do, indeed, have a right to be free from state violations of the constitutional guarantees to be secure in one's person and home, not to be deprived of life, liberty, or property without due process, and to be free from cruel and unusual punishment. Individuals, however, have no right to be free from the infliction of such harm by private actors. *See DeShaney v. Winnebago Cy. Dep't of Social Serv.,* 489 U.S. 189, 196, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989) (*DeShaney*) (Fourteenth Amendment's "purpose was to protect the people from the State, not to ensure that the State protected them from each other").

■ If a government officer does not act within his scope of employment or under color of state law, then that government officer acts as a private citizen. *Martinez v. Colon,* 54 F.3d 980, 986 (1st Cir.) (*Martinez*) ("acts of state officials in the ambit of their personal pursuits are not state action" (quo-

tations omitted)), *cert. denied,* —— U.S. ——, 116 S.Ct. 515, 133 L.Ed.2d 423 (1995); *Pitchell v. Callan,* 13 F.3d 545, 548 (2d Cir.1994) (off-duty police officer acted "as a private citizen, not as a state actor" when he did not act in accordance with police regulation or invoke the authority of the police department). The district court found that Stanewich did not act under color of law. Stanewich, therefore, acted as a private citizen in attacking the Van Orts.

■ Because Stanewich acted as a private citizen, the Van Orts had no constitutional right to be free from his deprivations of their constitutional rights. Generally, there is no constitutional right "to governmental aid [from private deprivations of constitutional rights] even where such aid may be necessary to secure life, liberty, or property." *DeShaney,* 489 U.S. at 196, 109 S.Ct. at 1003. Thus, the County owed no duty to the Van Orts to prevent Stanewich from attacking them in his private capacity.

Only under highly limited circumstances does the government have a duty to protect individuals from deprivations of constitutional rights by private individuals. *Id.* at 198, 109 S.Ct. at 1004–05; *see also Gazette v. City of Pontiac,* 41 F.3d 1061, 1065 (6th Cir.1994) ("the state does not violate an individual's due process rights by failing to protect him or her from the criminal actions of a private actor, absent some special relationship between the individual and state actor giving rise to a duty to protect"). Usually, affirmative government acts, like incarceration of criminals and institutionalization of the mentally ill, create these circumstances. *DeShaney,* 489 U.S. at 198–200, 109 S.Ct. at 1004–06.

The Van Orts can point to no affirmative government act that created a government duty to protect them from harm. *See Wood v. Ostrander,* 879 F.2d 583, 588–90 (9th Cir. 1989) (plaintiff could sue government when state officer affirmatively placed her in dangerous situation), *cert. denied,* 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990); *see also L.W. v. Grubbs,* 974 F.2d 119, 121 (9th Cir.1992) (generally citizens may not sue state employees who fail to protect them from harm committed by private parties un-

less there is a special relationship between the plaintiff or the state places the plaintiff in danger), *cert. denied,* 508 U.S. 951, 113 S.Ct. 2442, 124 L.Ed.2d 660 (1993). On appeal, the Van Orts concede as much, admitting that they are not "contending that this was a situation where the government had the duty to stop private actors from inflicting harms."

Instead, the Van Orts argue that there is a constitutional right to be free from constitutional deprivations by private actors when the state somehow "causes" the deprivations through inadequate hiring, training, or supervision. The Van Orts rely on *Bateson v. Geisse,* 857 F.2d 1300 (9th Cir.1988) (*Bateson* ), for the proposition that the County is liable for the constitutional violations caused by its policies regardless of whether the final actor was acting under color of law. *See id.* at 1304.

Nearly a decade before we refined the liability issue in *Oviatt,* we carefully pointed out the possible interaction between the identification of state action and causation. *See Arnold v. International Business Machines Corp.,* 637 F.2d 1350, 1355–56 & n. 2 (9th Cir.1981) (*Arnold* ) (determination of proximate cause may be similar to determination of state action). This type of analysis may occur when the person actually causing the harm is a state actor. *Id.* at 1356. Thus, although state action and causation are separate concepts, *Oviatt,* 954 F.2d at 1474, elements of the causation analysis have been used in determining state action. *Arnold,* 637 F.2d at 1356. As the Van Orts frame the argument, they attempt to implicate the fourth part of the *Oviatt* test, causation, as well as the first part: whether Stanewich's actions were under color of law.

*Bateson* states: "The requisite *causal connection* can be established not only by some kind of direct personal participation in the deprivation but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Bateson,* 857 F.2d at 1304 (emphasis added), *quoting Merritt v. Mackey,* 827 F.2d 1368, 1371 (9th Cir.1987). *Bateson* does not purport to establish a far-reaching constitutional right to freedom from constitutional

violations committed by private actors. *Bateson* merely raises the question whether a municipality's policy can "cause" injury when a government employee clearly acts outside his scope of employment or does not act under color of law.

■ Negligent hiring or supervision is proscribed under *Monell* but such negligence, as in all *Monell* actions, must be the proximate cause of the injuries suffered. Pointing to a municipal policy action or inaction as a "but-for" cause is not enough to prove a causal connection under *Monell.* Rather, the policy must be the proximate cause of the section 1983 injury. *See Mann v. City of Tucson, Dep't of Police,* 782 F.2d 790, 793 (9th Cir.1986) (section 1983 requires "proximate cause"); *Arnold,* 637 F.2d at 1355 (requiring but-for and proximate cause for section 1983 suits).

Traditional tort law defines intervening causes that break the chain of proximate causation. *Prosser and Keeton on Torts* § 44, at 312 (5th ed.1984). This analysis applies in section 1983 actions. *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 561 (1st Cir.1989) ("An unforeseen and abnormal intervention ... breaks the chain of causality, thus shielding the defendant from [section 1983] liability." (quotations omitted)); *Dodd v. City of Norwich,* 827 F.2d 1, 6 (2d Cir. 1987) (*Dodd*) ( a "policy [is] a proximate cause ... if [ ] intervening actions were within the scope of the original risk and therefore foreseeable" (quotations omitted)), *cert. denied,* 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 653 (1988). Applying these principles to this case, we must determine whether, as a matter of law, Stanewich's private actions were intervening causes which preclude any County liability for alleged negligent hiring or supervision. *See Springer v. Seaman,* 821 F.2d 871, 876–77 (1st Cir.1987) (although "the question of proximate causation [in a section 1983 action] is sometimes for the court and sometimes for the jury," the court decides whether reasonable disagreement on the issue is tenable).

The Van Orts have provided a detailed description of Stanewich's considerable disciplinary record. County citizens brought numerous complaints against Stanewich for use of excessive and improper force and unwarranted violence in arrest and detention. At least three of these complaints, dating from 1985 to 1988, were sustained. In 1991, Stanewich also was caught engaging in unauthorized surveillances in violation of workplace rules. For this infraction, Stanewich received a reprimand from a superior, who wrote on May 30, 1991, only one month prior to the Van Ort beatings, "I am not confident that Deputy Stanewich possesses the level of sophistication in his judgement capabilities necessary to function in his [job duties].... There is no room for mavericks or no compliance to the basic precept to sound judgment based on good common sense." Only one day before the beatings, Stanewich was formally transferred to the Sheriff's Street Narcotics Team so that he could be more closely supervised and monitored.

■ These facts do not show, as a matter of law, that the County could have foreseen Stanewich's actions, which would establish the necessary causal link between the County's policy and the Van Orts' injuries. Stanewich's disciplinary record may have put his supervisors on alert that he could be violent and prone to use excessive, even illegal, force while performing his duties. But the County could not reasonably have foreseen that Stanewich would become a free-lance criminal and attack the Van Orts as he did. *Cf. Martinez v. California,* 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980) (parolee's murder of decedent five months after being granted parole was "too remote a consequence of the parole officers' action to hold them responsible under [section 1983]"). His unforeseeable private acts broke the chain of proximate cause connecting the County's alleged negligence to the Van Orts' injuries. *See Dodd,* 827 F.2d at 6. Without proximate cause, there is no section 1983 liability. *Arnold,* 637 F.2d at 1355; *see also Bateson,* 857 F.2d at 1304 (requisite causal connection necessary to establish section 1983 liability).

Thus, whether we need to borrow elements of proximate cause analysis to determine the state action issue under *Bateson* is irrelevant. The Van Orts failed to prove causation.

## III

We now turn to the Van Orts' alternate argument that there was evidence supporting the finding that Stanewich acted, or purported to act, under color of state law. The jury did not decide this question; rather, the district court made this finding.

■ The district court was not required to find that Stanewich acted under color of state law merely because he was a law enforcement officer. *Gibson v. City of Chicago,* 910 F.2d 1510, 1516 (7th Cir.1990) ("[A]cts committed by a police officer even while on duty and in uniform are not under color of state law unless they are in some way related to the performance of police duties." (citations omitted)). Only if Stanewich's actions were in some way related "to the performance of his official duties," *Martinez,* 54 F.3d at 986, could his acts be fairly said to be under color of state law.

■ It cannot be reasonably argued—nor do the Van Orts contend—that Stanewich acted pursuant to any government or police goal. *See Screws v. United States,* 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495 (1945) (*Screws* ) ("Acts of officers who undertake to perform their official duties are [under color of law] whether they hew to the line of their authority or overstep it." (plurality opinion)). We affirm the district court's determination that Stanewich acted neither within his scope of authority nor under pretense of law. *See Mark v. Borough of Hatboro,* 51 F.3d 1137, 1150–51 (3d Cir.) (member of volunteer fire company not acting under color of state law when, acting as an arsonist, he set fires so that he could later put them out), *cert. denied,* —— U.S. ——, 116 S.Ct. 165, 133 L.Ed.2d 107 (1995); *Martinez,* 54 F.3d at 988 (policeman who, during private harassment, unintentionally fired service revolver thereby maiming fellow officer was not acting under color of state law). As in *Mark,* Stanewich was "pursuing his own goals and was not in any way subject to control by [his public employer]." 51 F.3d at 1151.

Stanewich also might have been acting under color of law if he had purported to or pretended to act under color of law, even if his goals were private and outside the scope of authority. *Screws,* 325 U.S. at 111, 65 S.Ct. at 1040 ("[U]nder 'color' of law means under 'pretense' of law. Thus acts of officers in the ambit of their personal pursuits are plainly excluded."); *see also Bonsignore v. City of New York,* 683 F.2d 635, 639 (2d Cir.1982) (acts committed by an on-duty, uniformed police officer are not under color of law if not "committed in the performance of any actual or pretended duty" (quotations omitted)). Similarly, Stanewich could have been acting under color of state law if the Van Orts had been injured during a meeting "related to the provision of services pursuant to [Stanewich's County] employment," and if Stanewich had used his "government position to exert influence and physical control" over the Van Orts, particularly if they were "in awe of government officials." *Dang Vang v. Vang Xiong X. Toyed,* 944 F.2d 476, 480 (9th Cir.1991). Relying on *Vang,* the Van Orts contend that Stanewich used his status and privileges as a law enforcement officer to gain entry to their home and to commit his crime.

The factual record before us is not altogether clear. In entering its September 23, 1993, summary judgment, the district court ruled that the County was not vicariously liable for the Van Orts' injuries. After a close reading of the depositions of Donald, Helen, and Donald's girlfriend, the court stated that Stanewich was not on duty and that

> [I]t is undisputed that at the time of his forced entry into the Van Ort residence on July 3, 1991, Stanewich was attired not in a uniform but in blue jeans and wore a mask, sunglasses and cap in an attempt to conceal his identity. He also wore a pair of rubber gloves. He did not display a badge to plaintiffs and denied being a police officer. Finally, it cannot reasonably be disputed that the purpose of Stanewich's visit to the Van Ort residence on that occasion was to rob and assault plaintiffs and had nothing to do with official police business.

Further, the court observed that "a close examination of Donald Van Ort's deposition transcript reveals that the door was open,

and thus access was obtained, *prior to* Van Ort's recognition of Stanewich."

At trial, Donald gave a different account. He stated that he opened the door, peeked out, and saw and recognized Stanewich. He further stated that

> as I opened the door a little further, about to find out what he wants today, and he turns around very quickly, he pulls down a nylon mask over his head and points a gun at me, and he's fumbling with some dark glasses at the same time, some real dark glasses.
>
> And at that time, I realized that this isn't a normal visit by Michael Stanewich, he's doing his, he's trying to rob me ... he comes through the threshold and pushes me ... I shout to my grandmother, "it's a robbery, grandma."

Based on the trial evidence, the Van Orts argued that Stanewich "acted as a police officer," apparently because he carried handcuffs and a gun. For this reason, and because Stanewich "was perceived as acting as a police officer," and allowed to enter due to that perception, the Van Orts contend that Stanewich acted under color of law.

The question whether Stanewich acted under color of state law—or for that matter the factual questions surrounding Stanewich's entry into the Van Orts' home—were not submitted to a jury. All we have is the September 1993 order. The Van Orts did not object to the order's conclusion. They asked for reconsideration only in their opposition to the County's motion for judgment as a matter of law after trial. The district court refused to reopen the issue.

We are not called upon, however, to resolve the minor discrepancies between the two accounts because, as a matter of law, neither account sufficiently shows action under color of state law. The two accounts agree that Donald opened the door in response to the doorbell before he recognized Stanewich. At no point did Stanewich purport to be acting as a policeman. On the contrary, he did not show a badge, but forced himself in wearing a nylon mask and pointing a gun at Donald, who then shouted "it's a robbery."

The Van Orts' argument rests largely upon Donald's trial statement that he recognized Stanewich as a police officer, and the conjecture that this recognition somehow rendered his acts under color of state law. Merely because Donald recognized Stanewich, however, would not make the attack under color of law. For instance, in *Barna v. City of Perth Amboy,* 42 F.3d 809 (3d Cir.1994), a police officer attacked an individual, who was his relation by marriage and, of course, therefore knew the officer personally. The officer used his service revolver and police-issued nightstick, *id.* at 813, yet the court held there was no action under color of state law. Merely because a police officer is recognized as an individual employed as a police officer does not alone transform private acts into acts under color of state law.

According to his trial testimony, Donald opened the door without knowing who was there. He then recognized Stanewich, who quickly put on a mask and pointed a revolver at him. Unlike the circumstances in *Vang,* Stanewich did not use his authority to gain entry to the home or to induce Donald to open his front door. Rather, Stanewich, while wearing his mask, used his gun and physical force to enter the house. As Donald's cry, "it's a robbery" shows, Donald was not under any illusion concerning Stanewich's intentions.

At most, Donald could contend that his recognition of Stanewich as a police officer caused him to hesitate and "open[ ] the door a little further" to find out what Stanewich wanted. Donald thereby could argue that Stanewich exerted physical control using his official status, as in *Vang.* But *Vang* cannot reasonably apply in this circumstance of conjectural, momentary, and de minimis physical control. The evidence shows that Donald would have opened the door regardless of whether Stanewich was a police officer, and Stanewich did not rely on Donald's recognition to gain entry; his gun and brute physical violence proved quite sufficient. Moreover, Stanewich did not purport to act under state law. Quite to the contrary, Stanewich, in a matter of moments, made it clear that his actions were illicit. In short, Stanewich exerted no meaningful, physical control over

Donald on the basis of his status as a law enforcement officer. Thus, Stanewich's acts were not under color of law.

## IV

On September 8, 1994, before the case was submitted to the jury, the district court ruled against the Van Orts' as a matter of law on their state law negligence claims. The Van Orts also raise this issue on appeal.

In California, a governmental entity can only be sued in tort pursuant to an authorizing statute or enactment. *Lopez v. Southern Cal. Rapid Transit Dist.*, 40 Cal.3d 780, 221 Cal.Rptr. 840, 842 n. 2, 710 P.2d 907, 909 n. 2 (1985) (*Lopez* ) ("all government tort liability must be based on statute," but "liability is deemed provided by statute if a statute defines the tort in general terms" (quotations omitted)); *Searcy v. Hemet*, 177 Cal.App.3d 792, 798, 223 Cal.Rptr. 206 (1986). According to a California statute, "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment...." Cal. Gov't Code § 815.2(a). At least for vicarious liability, this section would eliminate the County's liability, as Stanewich was not acting within his scope of employment.

The Van Orts argue that there could be liability under that statute because the jury could have concluded that Stanewich acted within his scope of employment. The California law, however, is to the contrary.

> [A]n employer will not be held vicariously liable for an employee's malicious or tortious conduct if the employee *substantially* deviates from the employment duties for personal purposes. Thus, if the employee inflicts an injury out of personal malice ... or acts out of personal malice unconnected with the employment ... the employee is not acting within the scope of employment.

*Farmers Ins. Group v. County of Santa Clara*, 11 Cal.4th 992, 47 Cal.Rptr.2d 478, 487, 906 P.2d 440, 449 (1995) (citations and quotations omitted). The free-lance criminal exploits of a law enforcement officer fall within the California Supreme Court's language in *Farmers*.

The Van Orts also argue that section 815.2, along with California Government Code § 820(a) ("a public employee is liable for injury caused by his act or omission to the same extent as a private person"), leaves open the possibility that there is statutory authority for a negligent supervision or promotion suit. But the wording of the statutes do not support the Van Orts' negligence claim. Section 815.2 provides for respondeat superior liability, and that avenue is closed to the Van Orts, as just discussed.

It can be argued that the statutory language conceivably provides for negligent supervision direct liability for acts employees committed within the scope of their employment. However, the language cannot support negligent supervision claims for actions outside Stanewich's scope of employment. Moreover, section 820 deals with defenses and immunities. It states only that if there is liability, a public employee is liable to the same extent as a private individual; it says nothing concerning the conditions under which public entity liability exists.

The case law is similarly unhelpful to the Van Orts. They cite *Grudt v. City of Los Angeles*, 2 Cal.3d 575, 86 Cal.Rptr. 465, 466–67, 468 P.2d 825, 826–27 (1970), for the proposition that California recognizes a cause of action against public entities for negligent supervision. This is not so. *Grudt* states only that "[a]lthough no California authorities deal with the precise question at issue [whether a cause of action for negligent retention exists]," *id.* 86 Cal.Rptr. at 468, 468 P.2d at 828, a plaintiff may amend his pleadings to allege such an cause of action. *Id.* at 469, 468 P.2d at 829. Similarly, *Lopez*, which the Van Orts also cite, only stands for the proposition that public carriers, pursuant to California Civil Code § 2100, have a duty to protect passengers from assaults by other passengers. *Lopez*, 221 Cal.Rptr. 840, 710 P.2d at 908. As part of this duty, the court mentioned in dicta that "[b]us drivers ... could be trained to recognize and deal with potentially volatile situations." *Id.* at 841, 710 P.2d at 911. There is nothing in *Lopez* which sanctions negligent supervision causes of action against public entities.

The case most helpful to the Van Orts is *Virginia G. v. ABC Unified School Dist.,* 15 Cal.App.4th 1848, 19 Cal.Rptr.2d 671 (1993). There, the court held that while school districts cannot be held liable under respondeat superior for teachers who sexually molest students, "claims against school districts premised on their own direct negligence in hiring and supervising teachers may be pursued." *Id.* at 1855, 19 Cal.Rptr.2d 671.

■ *Virginia G.* does not control here. First, the court limited its ruling to public schools and did not announce a general cause of action against all public entities for direct liability for their employees' misdeeds. Second, school districts have an affirmative duty to take all reasonable steps to protect their students. *Rodriguez v. Inglewood Unified School Dist.,* 186 Cal.App.3d 707, 715, 230 Cal.Rptr. 823 (2d Dist.1986). This includes protecting students against private actors, *Leger v. Stockton Unified School Dist.,* 202 Cal.App.3d 1448, 1460–61, 249 Cal.Rptr. 688 (3d Dist.1988). Similarly, the duty would extend to teachers acting outside of their scope of employment, who would become, in effect, private third parties. Thus, if certain hiring precautions should have reasonably been taken pursuant to this special duty, school districts can be liable.

*Virginia G.* is based upon and limited to the special relationship between a school district and its students. No similar special relationship exists between the County and the Van Orts. Unlike a school district's liability for a student's injuries, the County is not liable for harms committed by third parties or employees acting outside their scope of employment. It need not take special precautions, including in their supervision and promotion, to protect private citizens. Thus, *Virginia G.* is distinguishable, and we conclude that a California state court would not extend liability to these facts. *See Thorn v. City of Glendale,* 28 Cal.App.4th 1379, 1385, 35 Cal.Rptr.2d 1 (2d Dist.1994) (interpreting *Virginia G.* as based upon the "special relationship" between school districts and their students and concluding that *Virginia G.* "reserved the issue of public entity immunity for negligent supervision").

## V

■ Section 9351 of the California Probate Code states that "[a]n action may not be commenced against a decedent's personal representative on a cause of action against the decedent unless a claim is first filed as provided in this part and the claim is rejected in whole or in part." At the time this suit was brought, the Van Orts had not filed a claim with the Estate. Filing a suit against an estate is not equivalent to filing a probate claim. *Wood v. Brown,* 39 Cal.App.3d 232, 114 Cal.Rptr. 63, 67 (1974) (construing former California Probate Code § 709, which is an analogue to section 9351).

There is an exception to this sequence requirement. "An action to establish the decedent's liability for which the decedent was protected by insurance may be commenced ... without first filing a claim as provided in this part." Cal. Probate Code § 9390(a). However, if an action seeks damages exceeding the insurance coverage, it may not proceed "[u]nless a claim is first made as provided in this part." Cal. Probate Code § 9390(b). Moreover, California Probate Code § 554 states that, as a general rule, damages sought against an estate are limited to insurance coverage unless the estate's personal representative is joined as a party, and the plaintiff filed a claim according to section 9390. Because the Van Orts never made a claim, the Estate argues that their recovery should be limited to the insurance coverage.

The general procedure outlined in California Probate Code § 9100 requires that a claim be filed "[f]our months after the date letters are first issued to a general personal representative." However, a general personal representative was never appointed. Thus, the Van Orts argue that the section 9100 deadlines are not applicable. Therefore, they argue that they never had an obligation to file a claim.

The Van Orts' interpretation would have some force, if it were not for section 9100(b), which states that "a reference in another statute to the time for filing a claim means [the four months standard] unless the provision or context requires otherwise." Here,

the context of sections 554 and 9390 requires otherwise and trumps the requirements of section 9100.

The process for making a claim requires only that a claim be mailed to a "personal representative." Cal. Probate Code § 9251. Although the Estate has no general personal representative, there is a special administratrix. According to California Probate Code § 58, a "personal representative" includes a "special administratrix." Thus, there was someone with whom the claim could have been filed.

The district court relied on two cases, *Clark v. Kerby*, 4 Cal.App.4th 1505, 6 Cal. Rptr.2d 440 (1st Dist.1992), and *Burgos v. Tamulonis*, 28 Cal.App.4th 757, 33 Cal. Rptr.2d 728 (4th Dist.1994), for the proposition that California courts have allowed plaintiffs who did not file a probate claim before filing suit to remedy their error. In *Burgos*, a plaintiff made a claim against an individual who later died. The plaintiff never learned of the death until after the period for filing a claim with the estate had lapsed under the former California Civil Procedure Code § 375. The later filing was permitted. In *Clark*, the plaintiff, learning of the administration of defendant's estate too late, filed a claim after the section 9100 limitations. The case was remanded to determine whether there was a due process violation.

These cases speak generally about certain deadlines which are not directly relevant here and do not involve sections 544 and 9390 deadlines. Following the statute strictly, we hold that the Van Orts' failure to file a claim limits their recovery against the Estate to the extent of insurance coverage. Thus, this part of the district court's judgment must be reversed.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR ENTRY OF AN AMENDED JUDGMENT.