Theresa A. DINTINO;  James
T. Dintino,

v.

John   ECHOLS,   Police   Lieutenant,
Badge # 191, in His Individual and
Official Capacities as a Philadelphia
Police Officer;  John Norris, Deputy
Commissioner, Badge # 191, in His In-
dividual and Official Capacities as a
Philadelphia Police Officer;  Philadel-
phia Police Department City of Phila-
delphia, Theresa A. Dintino, Appel-
lant.

No. 03–1517.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit LAR
34.1(a) March 8, 2004.

Decided March 11, 2004.

Paul J. Hetznecker, Hetznecker & Mee-
han, Philadelphia, PA, for Appellant.

Craig R. Gottlieb, Philadelphia, PA, for
Appellee.

Before: SLOVITER and NYGAARD,
Circuit Judges, and OBERDORFER,*
District Judge.

*OPINION OF THE COURT*

SLOVITER, Circuit Judge.

Appellant Theresa A. Dintino appeals
from the order of the District Court dated
January 28, 2003 granting the motion of
defendants John Echols, John Norris, and
the City of Philadelphia for summary judg-
ment.   Dintino contends that the District

---

* Hon. Louis F. Oberdorfer, Senior District
Judge, United States District Court for the

District of Columbia, sitting by designation.

Court erred in finding that no genuine issue of material fact exists regarding whether Echols, a Philadelphia Police Department ("PPD") officer, lacked probable cause to arrest Dintino. We will affirm the District Court's order.

## I.

Because we write solely for the parties, we will limit our discussion of the background to only facts relevant to the issues presented. On January 6, 1999, Echols, a lieutenant with PPD's Internal Affairs Unit, received an anonymous letter alleging that Dintino, a clerk typist in PPD's criminalistics laboratory ("crime lab"), was receiving overtime pay for hours that she did not work. Specifically, the letter alleged that on a number of occasions when Dintino was scheduled for overtime and compensated accordingly, she was either at home or working at her second job as an aerobic instructor at Saint Agnes Hospital's Wellness Center ("Saint Agnes") in Philadelphia.

Based on allegations contained in the letter, Echols initiated an investigation of Dintino. He compared Dintino's employment record at Saint Agnes with her computer-generated Daily Attendance Reports ("DARs") from the crime lab, and discovered that on fifty-three occasions between January 7, 1998 and March 24, 1999, Dintino was signed in at the hospital to teach aerobics while at the same time scheduled for, and compensated for, overtime work at the crime lab. Echols also conducted a surveillance of Dintino's activities. On February 2, 1999, when Dintino claimed crime lab overtime from 5:45 p.m. to 10:45 p.m., Echols observed Dintino leaving the crime lab at 5:15 p.m. and not returning before 7:50 p.m., and saw her car parked outside her house at 8:10 p.m. On February 3, 1999, when Dintino claimed crime lab overtime from 5:45 p.m. to 11:45 p.m.,

another PPD agent observed Dintino leaving the crime lab at 5:10 p.m. and proceeding to Saint Agnes to teach aerobics. Echols then interviewed ten crime lab employees, including two of Dintino's supervisors. Both supervisors stated that while earning overtime, crime lab employees must be present in the crime lab building, that the work could not be done from an employee's residence, and that they never authorized Dintino to go to Saint Agnes or her home while she was working overtime at the crime lab.

Echols summarized the findings from his investigation in an Affidavit of Probable Cause and submitted it, along with supporting documents, to the Philadelphia County District Attorney's Office. After the District Attorney approved Echols' request for a warrant, which was then issued by a judicial officer, Dintino was arrested on July 20, 1999. Dintino then stood trial in the Pennsylvania Court of Common Pleas at a bench trial on the charges of felony theft, theft by deception, receiving stolen property, tampering with public records or information, securing documents by deception, and unsworn falsification to authorities. She was found not guilty on all charges on May 22, 2000. Dintino returned to her work with the crime lab in May, 2001.

Dintino filed the present action in the District Court against Echols, PPD Deputy Commissioner John Norris, and the City of Philadelphia, alleging (1) Echols and Norris committed unlawful seizure, false arrest, malicious prosecution, and illegal imprisonment in violation of Dintino's Fourth and Fourteenth Amendment rights as well as 42 U.S.C. § 1983, (2) the City of Philadelphia acted with deliberate indifference in failing to train Echols, in violation of 42 U.S.C. § 1983, (3) claims under Pennsylvania tort law, and (4) loss of consortium. The District Court, on January

28, 2003, granted defendants' motion for summary judgment on all counts, and entered judgment in favor of defendants. Dintino appeals only her claims against Echols and her federal claims against the City of Philadelphia.

## II.

The District Court had subject matter jurisdiction over Dintino's federal law claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and over her state law claims pursuant to 28 U.S.C. § 1367(a). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

We exercise plenary review of a district court's grant of summary judgment. *SEC v. Hughes Capital Corp.*, 124 F.3d 449, 452 (3d Cir.1997). Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

## III.

Dintino argues that the District Court erred in granting defendants' summary judgment motion because genuine issues of material facts exist as to whether Echols falsely arrested her without probable cause. She asserts that Echols "failed to properly handle the investigation" and "deliberately ignored evidence which contradicted his conclusion that [Dintino] had committed theft." Appellant's br. at 16. Specifically, Dintino contends, as she had during her trial in the Pennsylvania Court of Common Pleas, that while she did not work the specific overtime hours as stated in the DARs, she did make up for all those claimed hours at other times, as allowed under PPD policy. Furthermore, because of technical deficiencies in the DAR computer system, the DARs could not record Dintino's actual work hours because it could not account for breaks between work hours in a single work day. Had Echols examined Dintino's actual handwritten time sheets, therefore, he would have realized that the DARs did not accurately reflect Dintino's actual work hours, and that Dintino completed all her overtime hours.

It is well established that probable cause to arrest exists if at the moment of arrest "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [person being arrested] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir.1995). As we explained in *Barna v. City of Perth Amboy*, 42 F.3d 809 (3d Cir.1994), "Evidence that may prove insufficient to establish guilt at trial may still be sufficient to find the arrest occurred within the bounds of the law. As long as the officers had some reasonable basis to believe [appellant] had committed a crime, the arrest is justified as being based on probable cause." *Id.* at 819 (internal citation omitted).

Here, the record indicates that Echols had ample facts, based on reasonably trustworthy information, to support his conclusion that Dintino was stealing overtime pay from the PPD. He had initiated his investigation into Dintino's conduct based on a letter that, while anonymously written, asserted precise details regarding Dintino's job at Saint Agnes as well as the number of days on which Dintino allegedly stole overtime. He then personally compared Dintino's work records at both the crime lab and at Saint Agnes, and interviewed ten crime lab employees, to ascer-

tain the validity of the allegations. He even established, through personal surveillance, that Dintino was not working overtime at the crime lab on February 2, 1999, when Dintino's DAR indicated that she was earning overtime. Thus, we agree with the District Court that given all that Echols knew at the time of Dintino's arrest, no reasonable jury could have found that Echols did not have sufficient knowledge to warrant a reasonable person to conclude that a crime has been committed. *Orsatti,* 71 F.3d at 483.

Dintino, however, further argues that Echols improperly handled his investigation and deliberately ignored exculpatory information in rushing to the conclusion of probable cause. She specifically focuses on the fact that Echols failed to check Dintino's handwritten time sheets at the crime lab and focused on the materially erroneous DARs, that Echols created an intimidating interrogating environment during his interviews with other crime lab employees, and that Echols did not conduct a complete surveillance to determine whether Dintino made up for her scheduled overtime hours at a later time.

We are not persuaded by Dintino's argument. Dintino states that "[t]he question here ... is not who committed the crime, but whether a crime was actually committed." Appellant's br. at 24–25. This is plainly erroneous. The central question in this case is not Dintino's guilt, which was the subject of Dintino's trial in the Court of Common Pleas, but the existence of probable cause for Echols to believe that Dintino committed a crime at the time of Dintino's arrest. Therefore, so long as Echols had sufficient knowledge to support the probable cause, he is "not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed." *Merkle v. Upper Dublin Sch. Dist.,* 211 F.3d 782, 790 n. 8 (3d Cir.2000). Echols had no reason to doubt the accuracy of the DARs, which formed the basis of his interviews and surveillance activities. It was therefore reasonable for Echols to assume that Dintino did not return to the crime lab at a later time to make up for the scheduled overtime hours. Furthermore, Dintino has produced nothing, save pure conjecture, to show that Echols deliberately conducted a flawed investigation or recklessly disregarded exculpatory evidence. The testimony of witnesses in support of Dintino during the trial in the Court of Common Pleas, while important in establishing Dintino's innocence, is insufficient to undermine the existence of probable cause at the time of Dintino's arrest.[1]

We will therefore affirm the District Court's grant of summary judgment in favor of defendant Echols. Because we agree with the District Court that Dintino suffered no constitutional violation in the course of her arrest, we will also affirm the District Court's grant of summary judgment in favor of defendant the City of Philadelphia.

---

1. Because we agree with the District Court that Echols had probable cause to arrest Dintino, we need not examine the question whether Echols is entitled to qualified immunity.